WILLIAM LAMAR VS. JONATHAN MANRO.—*December*, 1838.

The object of the legislature in passing the act of limitations of 1715, ch. 23, was not in all cases to prohibit the giving in evidence of a bill or bond, where it might be above 12 years standing, or in any case where it was not itself the foundation of the action.

When an express promise is proved, to pay the balance, which might appear to be due upon a single bill, the bill itself, though over 12 years standing, may be offered in evidence, as furnishing the inducement to, or legal basis of the promise.

And when the action is brought in the name of the assignee of the obligee in the bill, proof of the assignment is not necessary, when the defendant has treated with, and recognized the assignee as the holder.

The jury from such conduct may infer, that the assignment was in the hand writing of the obligee.

When a party says, upon being called on to pay a debt, give me all the credits to which I am entitled and I will pay the balance, the plaintiff need only at the trial, show what is justly due. A preliminary settlement of the claim is not necessary to a recovery. There is no difference between the right of the obligee in a bond, and the assignee, though the latter may have only an equitable title, to recover upon the promise of the obligor to pay the money.

When the promise to pay the bill or bond is sufficiently proved, whatever aids and supports it, and tends to shew what is justly due, is as admissible as the bill or bond itself.

APPEAL from *Frederick* county court.

THIS was an action of *assumpsit*, commenced on the 16th October, 1835, by the appellee against the appellant. The declaration contains five counts.

1st *count*. That on the 29th April, 1816, the said *Lamar*, by his bill obligatory bearing date, &c. ten months after date promised and obliged himself to pay to a certain *Benoni S. Lamar* the sum of $350, and after several specific payments in part satisfaction of said bill, and on the 1st January, 1822, the said *B. S. Lamar*, by a written order on said bill endorsed, and by him subscribed, ordered and directed the said defendant to pay to the said plaintiff the full amount unsatisfied by said defendant, and delivered the said bill, with such order thereon, to said plaintiff—of all which the said defendant had notice—that after some other payments in part sa-

tisfaction of said bill, a certain statement, in writing, in the nature of a calculation of the amount due and unsatisfied upon said bill was presented to the said defendant, and by him carefully overlooked, examined and understood, and by which there was due $182 10 ; the said defendant then admitted the said statement to be just and correct, but then insisted that he was justly entitled to a further credit upon the said last mentioned bill, in part reduction of the same, to the amount of the proceeds of the sales of a certain quantity of tobacco before that time sold by the said defendant, and which proceeds had been received by the said plaintiff on account of, and as part payment of the said last mentioned bill.   But the said defendant in consideration of the premises, and in further consideration that the said plaintiff assented and agreed, at the special instance and request of the said defendant, to come to a fair and final settlement with the said defendant, touching and concerning the said debt by the said last mentioned bill testified, and of all payments so as aforesaid made in part satisfaction and reduction of the same, and touching and concerning the net proceeds aforesaid of the above mentioned sales of tobacco, &c. afterwards, on, &c. at &c. undertook, and then and there faithfully promised, and upon himself assumed to come to a fair settlement with the said plaintiff, whenever he, the said defendant, should be thereunto afterwards requested, touching and concerning the said debt, by the said last mentioned bill obligatory testified, and of all payments so as aforesaid made in part satisfaction, and in reduction of the same, and touching and concerning the amount of the net proceeds aforesaid, of the aforesaid sales of tobacco, so as aforesaid asserted to have been received by the said plaintiff as an additional and further credit in part deduction thereof, and upon ascertainment of the balance due upon and on account of said last mentioned bill obligatory, upon such settlement as aforesaid, to pay such balance to the plaintiff, when the said defendant should be thereunto next afterwards requested, and the said plaintiff in fact further saith, that upon the making of such fair settle-

ment as aforesaid, there would be found to be due and owing
upon and on account of said last mentioned bill obligatory,
and the said plaintiff expressly avers, that there is still due
and owing, and unsatisfied, after all payments made as afore-
said, and after crediting the net proceeds of the sales of to-
bacco, so as aforesaid asserted to have been received by the
said plaintiff, and over and above all credits, and over and
above all matters of set-off and discount, a large sum of
money, to wit, the sum of five hundred dollars current money,
to wit, at *Frederick* county aforesaid, and the said plaintiff
avers that from the time of the making of the said promise of
the said defendant herein before last mentioned, and thence-
forth, hitherto he the said plaintiff hath been ready and will-
ing, and prepared at all times, and was then and there well
known to the said defendant, and hath in fact from time to
time, and ofttimes since the making of the said last men-
tioned promise and undertaking of the said defendant, last
before mentioned, and before the commencement of this suit,
invited, requested and solicited the said defendant to come to
a fair settlement with him the said plaintiff as aforesaid, and
to pay to him the said plaintiff, such balance as upon such
fair settlement should be found to be due, to wit, at *Frederick*
county aforesaid.   But the said defendant, not regarding his
said promise and undertaking, hath hitherto wholly omitted,
neglected and refused to come to such settlement with the
said plaintiff, and still doth neglect and refuse to come to
such settlement with the plaintiff, to wit, at *Frederick* county
aforesaid, and the said defendant in like manner hath refused,
although thereunto often requested, and still doth refuse, to
pay to the said plaintiff the balance due and owing upon
and on account of said bill obligatory, to wit, at *Frederick*
county aforesaid.

2d *count.* This count alleged that the plaintiff in this ac-
tion was the equitable holder of the said single bill—that it
was barred by the statute of limitations—that certain pay-
ments had been made thereon, and counted on an express
promise of the defendant to pay the plaintiff the balance due
upon said single bill.

3d *count.* For matters and things properly chargeable in account, &c.

4th *count.* Was the general count for work and labour, &c. and the money counts, &c.

5th *count.* Was upon an accounting together.

The defendant pleaded *non-assumpsit,* on which issue was joined.

1st EXCEPTION.—At the trial, the plaintiff proved by *Thomas Lamar,* a competent witness, that *Drucilla Lamar,* the subscribing witness to the single bill herein after set forth, is the wife of the defendant, and the signature, "*William Lamar,*" as the obligor in the said single bill, is in the hand-writing of the defendant. The same witness proved that the obligee mentioned in the said single bill, is the brother of the defendant, and lives in the *Western country.* The plaintiff proved further by *Jonathan Manro,* a competent witness, that the writing on the back of the said single bill in these words following:

"BALTIMORE, *June* 18, 1822.—Rec'd of *William Lamar,* fifty dollars of the within note.         N. A. MANRO,"

is in the hand-writing of the said *Nathan A. Manro*; that the said *Nathan A. Manro* is dead, and that he was the clerk of the plaintiff, and transacted his business and cash concerns. The plaintiff further proved by *Perry Hilliary,* a competent witness, that he called on the defendant, at the instance of the plaintiff, in April or May, 1833, and presented to him the following statement:

*William Lamar,* in account with *Jonathan Manro.*

| | |
|---|---:|
| To note dated 29th June, 1816, at 10 months, . | $350 00 |
| Interest from 29th April, 1817, to 30th March, 1819, | 40 31 |
| | $390 31 |
| By cash paid on note, 30th March, 1819, . . | 164 00 |
| | $236 31 |
| Interest from 30th March, 1819, to 18th June, 1822, is 3 years 2 months and 19 days, . . . | 45 65 |
| | $281 96 |

Lamar *vs.* Manro.—1838.

| | | | |
|---|---|---|---:|
| By cash, 18th June, 1822, received, | . | . | . 50 00 |
| | | | $231 96 |
| Interest from 18th June, 1822, to 25th May, 1824, is 1 year 11 months and 24 days, | . | . | . 27 60 |
| | | | 259 56 |
| May 25, 1824.   By cash received this day, . | | . | 40 00 |
| | | | $219 56 |
| Interest from 25th May, 1824, to 12th Sept. 1826, is 2 years 3 months and 18 days, | . | . | . 30 22 |
| | | | $249 78 |
| By cash, 12th September, 1826, . | . | . | . 50 00 |
| | | | $199 78 |
| To 3 years interest from 12th September, 1826, to September, 1829, . | . | . | . 36 00 |
| | | | $235 78 |
| By cash for tobacco, on the 12th September, 1829, | | | 92 23 |
| | | | $143 55 |
| Interest from 12th September, 1829, to 12th September, 1833, is 4 years, | . | . | . 34 32 |
| Balance due J. Manroe, | . | . | . $177 87 |
| 2 months interest to 12th November, 1833, | | . | 1 88 |
| 12th February, 1834, amount of $181 02. | | | $179 75 |

And asked the defendant for the balance of the money which appeared to be due on the said statement, and said that he had promised the plaintiff to remit it to him by mail.   The defendant took the paper, and on looking over it, said he did not think he owed so much on the note, as appeared on the said paper.   The defendant said that he had sent a crop of tobacco to *Baltimore*, for the purpose of paying upon that note, and he did not think that he had been allowed the credit.   The defendant said further, that upon a fair state-

ment, he would pay whatever was justly due; but said it was not convenient for him to pay the money at that time, and further added that he did not think there was as much due as appeared upon the statement. The same witness proved that the defendant admitted there was a balance due on the note, and that the same ought to have been paid before, and that the plaintiff had been indulgent to him. Witness understood defendant to further say, that the plaintiff held the said note, and that it had been assigned by his the defendant's said brother, to him the said plaintiff. The same witness proved upon cross examination, that the defendant at the same time, and in the same conversation, said he had placed fifty dollars in his brother's hands, to be paid to *Manro*, and credited on the note, but said that upon the statement above mentioned, it appeared that he, defendant, had not received the said last mentioned credit; defendant did not say whether the said fifty dollars had been placed in his brother's hands, before the said note was assigned, or otherwise; but said it was to be paid to the plaintiff, and credited on the note. The plaintiff then offered the said single bill in evidence to the jury.

" Ten months after date I promise and oblige myself, my heirs, executors or administrators, to pay or cause to be paid unto *Ben. S. Lamar,* his heirs or assigns, the just and full sum of three hundred and fifty dollars, for value received, as witness my hand and seal the 29th day of June, 1816.

$350.                          WILLIAM LAMAR. [Seal.]

Witness—*Drucilla Lamar.*"

Which is thus endorsed—" *March* 30, 1819. Received of *William Lamar,* one hundred and forty dollars of the within note, by me.                          BEN. S. LAMAR."

" *April* 17, 1819. Also credit to *William Lamar,* for 24 dollars.                          BEN. S. LAMAR."

" BALTIMORE, *June* 18, 1822.

" Received of *William Lamar,* fifty dollars of the within note.                          N. A. MANRO."

" Pay *Jonathan Manro,* or order.     BEN. S. LAMAR."

To the admission of which said last mentioned evidence, the defendant by his counsel objected on two grounds.

1. Because the supposed assignment of the said single bill, by the obligee to the plaintiff, ought to be proved, either by the assignor, or by proof of his hand-writing as assignor.

2. Because the said single bill is above *twelve years* standing, and is not admissible in evidence against the defendant, under the act of assembly of 1715, chapter 23.

But the court (*A. Shriver* and *T. Buchanan, A. J.*) overruled both of the said objections, and admitted the said single bill to be read in evidence, to the jury.

The defendant excepted.

2d EXCEPTION. The plaintiff then read in evidence the following affidavit, taken by consent, and admitted to be read as if the affiant were in open court to testify to the same.

*Samuel H. Whittington* deposes, that the paper marked A, is in his hand-writing, and contains a true and correct statement of the weight and prices of two hogsheads of tobacco, sold for Mr. *William Lamar,* of *Frederick* county, by Messrs. *Starr & McCormick,* of *Baltimore,* in the month of July, 1829—that the deponent then lived with said Messrs. *Starr & McCormick* as a clerk—that he does not now recollect whether Mr. *Lamar* brought the tobacco, or brought samples in the first instance; but recollects very well that he was there about the said tobacco—that it was sold by Messrs. *Starr & McCormick,* as commission merchants, for said *William Lamar,* and that said paper A, contains an accurate statement of the quantity of said tobacco, and the price; and that the net proceeds was $92 23, and no more—that said net proceeds were paid over to *Jonathan Manro,* of the city of Baltimore, in virtue of the order dated 25th July, 1829, contained in the paper marked B, purporting to be signed by *William Lamar*—that he does not know the hand-writing of said *Lamar*—that the receipt below said order, dated 29th July, 1829, and signed by said *Jonathan Manro,* was signed by said *Manro* on receipt of said sum of $92 23, and which was paid to him in virtue of said aforesaid order—that this

deponent continued to live with said *Starr & McCormick*, until March, 1831, and that said Messrs. *Starr & McCormick* at no time sold any other tobacco for said *Lamar;* nor does this deponent know that he, the said *Lamar*, had any other tobacco at any time in the city for sale.

And thereupon, and also upon the whole of the evidence stated in the first bill of exceptions, which is to be taken and considered as if stated in this bill of exceptions, the defendant by his counsel prayed the opinion of the court, and its instruction to the jury, that if they shall believe from the evidence, that the defendant did not make any promise to pay any balance on the said single bill, other than a promise that upon a fair settlement he would pay whatever balance was justly due thereon, then the plaintiff is not entitled to recover, unless he shews that a settlement was made between himself and the defendant in relation thereto, and a balance remaining due upon such settlement, or unless he shows at least an offer on his part to make a settlement, and thereby to ascertain the balance due on said single bill. But the court (*Schriver and T. Buchanan. A. J.*) refused to grant the said prayer or to give the said instruction to the jury.

The defendant excepted.

3d Exception.—The defendant by his counsel then prayed the opinion of the court, and its instruction to the jury, upon the whole of the evidence stated in the preceding bills of exceptions, which is to be taken and considered as if stated in this bill of exceptions, that the promise as proved in this case, is not a sufficient promise to enable the plaintiff to recover; and that he cannot be permitted to resort to other evidence than the mere promise itself. But the court refused to grant the said prayer, or to give the said instruction to the jury.

The defendant excepted.

4th Exception.—The defendant by his counsel then prayed the opinion of the court, and its instruction to the jury, that upon the whole of the evidence stated in the preceding bills of exceptions, which is to be taken and considered as if stated in this bill of exceptions, if they shall believe that the

defendant at the time of the promise as aforesaid, or in any part of the conversation to which *Perry Hilliary* testified, did not admit or acknowledge a specific or particular, or what balance remained unpaid on the said single bill, then the plaintiff is only entitled to a verdict for nominal damages. But the court refused to grant the said prayer, or to give the said instruction, and told the jury that the plaintiff was entitled to recover whatever balance he could show to be due.

The defendant excepted.

The jury found a verdict for the plaintiff, and the defendant prosecuted the present appeal.

The cause came on to be argued before BUCHANAN, Ch. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, Judges.

PALMER, for the appellant.

1. Upon the first bill of exceptions, contended that the admissibility of the evidence depended on the construction of the act of 1715, ch. 23. It is a question peculiar to the Maryland law. The first clauses of the statute relate to lapse of time producing a loss of the remedy. The 6th section, however, destroys the right. The bond is no longer to be admitted in evidence. If the bond were in evidence, a debt is thereby admitted, and a good foundation for a promise. If the case rested on admissions, it would present one question, and the character of the admission would depend on the character of the proof. The admission of the bond might prejudice the defendant. It is not admissible without violating the statute, but it is said to be admissible as inducement to a promise.

2. This action is not sustainable, because not founded on a legal consideration. A moral foundation will not suffice. *Manro*, the plaintiff, has no legal interest in the note. He has a mere equity, and could never have sustained a suit in his own name; and though on a new promise of the obligor to the obligee, who unites in himself the legal and moral obligation, may sue, yet here, as this union exists not, the action

cannot be maintained. The act of 1829, ch. 51, demands a written assignment, and a blank endorsement does *not* assign a *specialty.* 2 *Kent,* 465. 7 *Cox Rep.* 57. *Wennall vs. Adney,* 3 *Boss. and Pull.* 249, note (*a.*) *Edwards and Wife vs. Davis,* 16 *John. Rep.* 281. *Pennington vs. Gittings,* 2 *Gill and John.* 208. *Lee vs. Muggeridge,* 5 *Taunt.* 36.

The cases of bankruptcy and infancy, as furnishing sufficient consideration for an *assumpsit,* are founded on legal obligations.

A court of law will not sustain a claim, where there is an equitable remedy.

3. The undertaking in this case, if any, was accompanied with declarations repelling the idea of a promise. The defendant claimed credits not allowed. He declares that on a fair statement he will pay what is due. The statement there referred to was one to be made by defendant with the plaintiff. The prayer is hypothetical. The promise is qualified and conditional. He did not promise to pay a specified sum. It is a promise to pay a balance not ascertained, and no offer ever made to ascertain it. There is nothing in the evidence to explain the disputed points, nor what was left open by the proof. Compliance with a conditional promise must be shown; but this was taken from the jury. *Clementson vs. Williams,* 8 *Cranch,* 72. 1 *Chitt. Plea.* 337, 8. *Oliver vs. Gray,* 1 *Harr. and Gill,* 204, 216. 2 *Stark, new ed.* 479. *Bell vs. Morrison, et al,* 1 *Pet. S. C. Rep.* 361. *Bush vs. Barnard,* 8 *John.* 408. *Danforth vs. Culver,* 11 *John.* 146.

The word statement means settlement between the parties.

4. It is a question for the court to decide whether the promise in this case, as proved, is a sufficient promise to enable the plaintiff to recover. *Oliver vs. Gray,* 1 *Harr. and Gill,* 219.

5. The evidence offered to the jury varies from and does not support the material allegations in the declaration. 1 *Chitt. Plea.* 335. *Pittam vs. Foster, et al,* 1 *B. and Cres.* 248. *Tanner vs. Smart,* 6 *B. and Cres.* 603.

6. There must be a promise to pay a specific sum, or the plaintiff can only recover nominal damages.

Wm. Schley, for the appellee.

A single bill, barred by limitations, is not excluded as evidence for every purpose. If the distinction contended for be true, the defendant under this special declaration, could have craved oyer and demurred, and need not have pleaded the statute in bar. It comes to that question, could the party have demurred on oyer ? If not, then the bond is not absolutely worthless.

. There are many cases in which this bond might come in as evidence—as in an indictment for forgery ; as collateral proof; as evidence of a credit after the day. The true meaning of the statute is, that it shall not be evidence of the *debt,* so as to enable the holder to sue independently upon it; but the paper remains as a muniment of what was transacted.

The theory of the statute is to protect defendants who may have lost evidence of payment. 8 *Law Lib.* 3. 2 *Stark. Evid.* 772. The point relied on was an open one at the time the cause in 7 *Harr. and John.* was decided. But that case settles that the suit may be brought on a new promise, and the bond thus barred by lapse of time, offered in evidence. Indeed, the bond must be offered ; the cause could not proceed without it.

On the second point, the general doctrine is, that a moral consideration is sufficient to maintain an express promise, though not an implied promise. A moral obligation is sufficient for an express promise, though no legal obligation ever existed as in case of *infancy. Wetzell vs. Bussard,* 11 *Wheat.* 314.

A promise to an assignee of a specialty will maintain an *assumpsit* in his own name. *Allston vs. Contee,* 4 *Harr. and John.* 357. *Barger vs. Collins,* 7 *Harr. and John.* 213. There is no foundation for a new distinction arising out of the act of limitation. *Owings vs. Owings,* 1 *Harr. and G.* 490. The assignee has as much natural equity as the principal creditor.

On the third point, the insufficiency of the promise in the view now taken of it, was not raised below. There it was

admitted to be a conditional promise to pay what was to be afterwards ascertained; now it is said no recovery can be had unless a statement was made. The difference is between settlement and statement. A settlement comprehends all transactions; a statement may be made by any body. The point raised below was not warranted by the proof. The promise was in effect to pay what was justly due.

The third exception was contrary to Veasy and Bassett. It demands that the promise should be co-extensive with the cause of action as pleaded. 1 *Law Lib.* 135.

ARCHER, Judge, delivered the opinion of the court.

The plaintiff relying for recovery upon a promise, as he alleged, to pay the balance due upon a single bill, offered in evidence to sustain his action, and to furnish a proper foundation for the promise, a single bill, which bears date upwards of twelve years before the institution of the suit; and the admissibility of the single bill in evidence, is resisted, upon the ground that the act of limitations of 1715, ch. 23, sec. 6, declares that no bill, bond, &c. shall after twelve years be pleadable or admitted in evidence, except, &c.

The object of the legislature in the enactment of this section, was not to prohibit the giving in evidence of a bill or bond in every case where it might be above twelve years standing, or in any case where it was not itself the foundation of the action. Anterior to the act of assembly, no law was in existence limiting the time of bringing suits upon single bills or bonds; but to defeat recoveries on ancient bonds, defendants were obliged to resort to a presumed payment from lapse of time.

But the legislature of 1715 deemed it necessary to prescribe a period of time within which suits should be instituted on bonds, as well as a period within which other actions should be brought. This is shown as well by the title of the act, which *is an act for the limitation of actions, for avoiding suits at law*, as by the preamble, which declares that, *for as much as nothing can be more essential to the peace*

*and tranquillity of this province, than the quieting of the estates of the inhabitants, and for the effecting of which no better measures can be taken than limitation of time for the commencing of such actions, &c. from the time of such action accruing:* and such has been the uniform construction of the act, it having been considered necessary to plead the statute in defence to a bond, which would have been wholly unnecessary if the construction attempted to be placed upon the law conformed to the legislative intention. *4 Harr. and John.* 541.

In this suit no action has been instituted on the single bill, but it is an action of *assumpsit*, upon an express promise to pay whatever balance might appear to be due on the single bill ; and the bill is introduced, not as the cause of action, but as an inducement to, as explanatory of, and as furnishing the legal basis of the promise ; and in this point of view, we think the court were clearly right in receiving it as evidence.

Nor could it be objected that the evidence was inadmissible, without proof of the assignment by the assignor, or proof of his hand-writing, when the defendant had admitted that the plaintiff had held the note, and that it was assigned to him, and had recognized his ownership of the note, by making payments thereon to him, acknowledging his indulgence, and promising upon a fair statement of the balance, to pay what might be due thereon. These were all facts, from which the inference might legitimately be drawn, that the assignment or order endorsed thereon to pay to the plaintiff, was in the hand-writing of the obligee.

The prayer contained in the second bill of exceptions, supposes that a conditional promise had been made by the defendant to pay, and that the condition was, that he would pay whatever upon a fair settlement should be justly found to be due ; and on this construction of the evidence, the court are desired to say, that there could be no recovery unless the condition had been complied with, or there had been an offer on the part of the plaintiff, to make a settlement. But accord-

ing to our views of the evidence, there is nothing to warrant the prayer. The evidence has no reference to a settlement between the parties, nor do we believe the promise conditional in the sense in which the appellant's counsel insist it is. The defendant did not think as much was due as the statement indicated; supposed he was entitled to other credits, and said upon a fair statement he would pay whatever was justly due; but that it was not at that time convenient for him to pay, which we consider in effect a promise to pay whatever was justly due on the bill. Nothing has been offered in evidence to impeach the statement in the first instance presented to the defendant, except his impressions; and to suppose that he meant as a condition of his payment, that the statement should be copied and again presented, would be imputing to the defendant a folly which he could not have intended, and which the general tenor of the evidence would not justify. Give me all the credits to which I may be entitled, and I will pay you the balance, is in substance the evidence. The defendant does not say, they are to come to an agreement, or settlement, in relation to the credits, or that he should be the judge of the credits to which he was entitled; but that he would pay what was justly due, and when the plaintiff has shown at the trial what was justly due, he has done all that was necessary to entitle him to recover. We therefore consider there was no error in the second bill of exceptions.

From the preceding view which has been taken of this promise, it would be sufficient to sustain the action at the suit of the assignor of this bond, had the promise been made to him, because a good and valuable consideration once existed, which becoming inoperative by positive law, always furnishes a sufficient foundation for an express promise. This position is not denied; but it is insisted that as the assignee held only an equitable interest in this bill, and could maintain no suit in his own name, without the use of the name of the assignor, that an express promise made to him will not enable him to maintain this action. Without meaning to determine

whether since the act of 1829, ch. 51, he could or could not have sued in a court of law upon this bill in his own name, we must be permitted to say that the distinction attempted to be taken between express promises made to him who held the legal obligation, and to one who merely holds the equitable right to such an obligation, is unsupported either by reason or authority. The assignee takes the place of the assignor, and being invested with all his beneficial rights, is protected in them, both in courts of law and in equity, against all interferences by the assignor, prejudicial to his interests; and if the obligor was in conscience bound to pay the assignor, notwithstanding the legal impediment interposed by the statute of limitations, is he not equally bound to pay him who is equitably invested with all the rights of the assignor, and ought not the express promise to be as binding in the one case as the other? Had this been an open account assigned, an express promise to the assignee, with notice of the assignment, would have enabled the assignee to have recovered at law in his own name. 1 *Harr. and John.* 114. The antecedent legal obligation furnishes the consideration for the promise, and having been assigned, the equitable holder may enforce the promise at law. The cases cited by the appellant's counsel, do not in our opinions maintain or countenance the distinction attempted to be taken; but the *third* bill of exceptions embraces another proposition equally untenable.

It is supposed in the prayer that the plaintiff could not be permitted to resort to other evidence than the promise. The prayer is very general in its terms, and if granted as an independent proposition, would have excluded all other evidence offered by the plaintiff, than the promise itself, which proposition is entirely inadmissible. The other evidence offered as inducement to the promise, we have seen, was admissible, and the promise being sufficient, whatever might aid and support it, or tend to show what was justly due on the bill, was just as competent as the bill itself. But this was offered, probably, as a proposition connected with that which had preceded it, and if we could have believed the promise had

been insufficient to sustain the action, other evidence could not be resorted to, as the acknowledgment of the defendant, that a balance was due on the bond, for that would not have sustained the action. 3 *Gill and John.* 491. We are therefore of opinion the court were right in their refusal to grant the defendant's prayer, as contained in the third exception.

It will follow from the preceding opinion, that the court were also right in refusing the defendant's prayer in the fourth exception, and agreeing with the county court in all the opinions by them expressed, we affirm the judgment.

JUDGMENT AFFIRMED.