ROBERT J. YOUNG AND WIFE,         
vs.         DECEMBER TERM, 1850.
LOUIS MACKALL, JR., ET AL.

[LIMITATIONS—PROOF OF CLAIMS—CHANCERY PRACTICE—TRUSTS.]

AN express promise to pay the debt will not revive the remedy, upon a bond barred by the statute; though upon such promise suit may be maintained, and the bond, though over twelve years standing, may be offered in evidence, as the inducement to, or consideration of, the promise.

When a claim is founded upon a lost instrument, evidence of the loss must be first offered, and then a copy, or parol evidence of its contents, may be used: the existence of the original must be first proved before a copy is admissible.

A judgment was rendered for the penalty of the bond sued upon, to be released upon payment of such sum, as certain persons named should say was due. HELD—That this was a final, and not an interlocutory judgment, and could be set up as a claim against the estate of the defendant, though the referees did not ascertain the sum due until after his death.

The judgment was final, and to make it absolute, no further action of the Court was necessary: the filing of the certificate of the referees was all that was required for the purpose.

Where proof is taken, under an order of Court, and the notice was, that depositions would be taken on a certain day at a certain place, and they do not appear upon their face to have been taken at the *place* designated, they are not admissible in evidence.

A claim was set up against the proceeds of the real estate of a deceased person, sold for the purpose of partition amongst his heirs-at-law, founded upon two single bills executed by the deceased, and which, at the time of their filing, were barred by limitations. To remove this bar, a bill in equity by the executor of the obligee, and the answer of the deceased admitting the existence of the single bills, and expressing his willingness to settle upon certain conditions, filed more than nine years before the filing of this claim, were offered in evidence. HELD—That this was not sufficient to remove the bar of the statute, pleaded by one of the heirs-at-law of the deceased.

The action upon a promise to pay a debt, which is barred by the statute, must be in *assumpsit;* and to such an action, three years is a bar.

Trusts, which are not affected by the statute of limitations, are those technical and continuing trusts, which are not cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of Courts of Equity.

But where the jurisdiction is concurrent, and the party is at liberty to pro-

ceed in either Court, the statute is equally a bar in both; and in all such cases, equity adopts, by analogy, the time prescribed by law.

As soon as the cause of action accrues, whether it be the case of a trust or not, if it be a fit subject for a suit at law as well as in equity, the statute of limitations begins to run.

The statute may be pleaded, as a defence, at any time after the claim has been filed; or brought before the Court, either before the case has gone to the Auditor, or after he has made a report on it.

[The real estate of Thomas Mackall, deceased, was sold under the proceedings in this case for the purpose of partition among his heirs-at-law, and claims were filed by various parties against the proceeds. These claims are disposed of in the following opinions of the Chancellor. Claim No. 1 is founded upon a judgment recovered against the said Thomas Mackall, by Joseph W. Reynolds, and is presented by the executors of the latter. The objections to this claim are fully stated in the first opinion of the Chancellor. No. 2 is a single bill for $629 69, executed by the deceased to his sister, Anne R. G. Mackall, on the 22d of March, 1833, and payable two years after date, with interest from date. No. 5 is founded upon the copy of a single bill, the original of which was alleged to be lost; executed by said Thomas Mackall, in favor of his said sister, Anne R. G. Mackall, for $705 65, dated the 15th of July, 1837, payable in three years from date. In support of this claim was offered a certificate by Thomas Mitchell, for William Hance, clerk, certifying, that on the 15th of July, 1837, Thomas Mackall deposited in the Clerk's Office of Calvert County a note of that date, drawn by him in favor of Anne R. G. Mackall, for the sum of $705 65, payable three years after date, with interest from the 9th of April, 1833, and the deposition of Augustus R. Sollers, Clerk of Calvert County Court, taken before a justice of the peace, stating that he had, at the request of the attorney of Miss Anne R. G. Mackall, made frequent and repeated searches among the papers in his office, for the purpose of finding the note of Thomas Mackall, referred to in the certificate of William Hance, former Clerk of said Court, and that he has been unable to find the said note, and he believes the same to be lost or mislaid. No. 6 is

an open account against said Thomas Mackall, in favor of the said Anne R. G. Mackall, for the hire of negroes, commencing January 1st, 1834, and ending January 1st, 1837, amounting to $519 84. Various depositions were taken in support of these three last claims, and in order to rescue them from the plea of limitations pleaded against them by Louis Mackall, Junior, one of the heirs-at-law of the deceased. The purport of these depositions, and the objections to them, are fully stated by the Chancellor. The other claims in dispute, and the proof in their support, as well as the proceedings in the case, will also be found in the opinions.]

THE CHANCELLOR:

This case standing ready for further directions, on the objections to the claims of the creditors, and on the exceptions to the Auditor's report, and being submitted on behalf of Louis Mackall, Jr., under the order of the 20th of June last, and upon arguments in writing, of his solicitor, the proceedings have been read and considered.

This case presents for consideration, among others, the exceptions taken by said Mackall, to claims numbered 4, 5, and 6. The Auditor reports that claims Nos. 4 and 6 are barred by limitations, and that the last is not proved, though the first is. No. 5 he reports not barred and fully proved.

The counsel for Mackall controverts the conclusions of the Auditor in part, insisting that all of these claims are barred, and that none of them are proved either by the evidence in the cause at the time the Auditor made his report, or by that subsequently taken. Full proof of these claims being demanded by Mackall, and the act of limitations being relied on by him, it becomes necessary to inquire whether the plea is applicable, and the proof required furnished.

No. 4 professes to be founded upon the single bill of the deceased, Thomas Mackall, dated the 22d of March, 1833, payable two years after date, and was filed on the 4th of November, 1847. The debt or thing in action had, therefore, been above twelve years standing, when the claim was filed, and the

instrument consequently, by the terms of the Act of Assembly, could not be pleaded or given in evidence. The evidence of George Denton, filed on the 20th of June last, assuming it to have been regularly taken (which I do not decide), does not in my opinion exempt this claim from the operation of the statute. He proves he heard the deceased say he owed his sister a sum of money. But the decisions of the Courts are conclusive to show that evidence of this kind is not sufficient. Nay that even an express promise to pay the debt will not revive the remedy upon the bond, barred by the statute, though upon such promise suit may be maintained, and the bond, though over twelve years standing, may be offered in evidence as the inducement of the promise. *Veasey* vs. *Bassett*, 7 *H. & J.*, 461; *Lamar* vs. *Manro*, 10 *G. & J.*, 50. This claim, therefore, is barred as against the party relying upon the statute.

The Auditor reports claim No. 5 as not barred, and as fully proved, but in this, I think, as the proof now stands, and in opposition to the exceptions to its admissibility, he is in error. Though the certificate of Thomas Mitchell, and the deposition of Sollers, together with the deposition of Anne R. G. Mackall, may have been sufficient before their admissibility was excepted to, they are not now, in my opinion, being excepted to, such proof as the law required. The certificate of Mitchell, and the deposition of Sollers are *ex parte*, and the former is not under oath. When a claim is preferred, founded on a lost instrument, evidence of the loss must be first offered. When that is done, a copy or parol evidence of the contents of the paper may be used, but you must first prove the existence of the original, for you cannot offer in evidence a copy, without previously showing that the instrument of which it purports to be a copy, existed as a genuine instrument. 1 *Stark. on Ev.*, 340, 341. Now it may be, and I am not prepared to say otherwise, that the proof exhibited (though full proof was demanded) would have been sufficient to establish the claim, if exceptions had not been filed to it. But these exceptions were not filed until the 20th inst., and the creditor, relying

upon the report of the Auditor, and seeing no exceptions to the admissibility of the proof, may well have supposed the claim would be allowed. The claim, with all the evidence in support of it, was filed on the 21st of March, 1849. The report of the Auditor allowing it was filed on the 13th of February, 1850, and it is not until the 20th of July, 1850, the day fixed for the hearing, that the admissibility of the proof is excepted to. Under these circumstances, I think justice requires that some further time be given to establish this claim.

No. 6 is barred by limitations, and must be rejected so far as the objecting party is concerned.

The exception to claim No. 1, being the claim of the executors of Joseph Reynolds, I do not think well taken. The claim is founded upon a judgment against Thomas Mackall, rendered at March Term, 1833, and revived by *scire facias* at March Term, 1844. The judgment was for the penalty of the bond sued upon, to be released on the payment of such sum as certain persons named should say was due; and it is contended, that because these persons did not ascertain the sum due until after the death of Mackall, no use can be made of the judgment here. In other words, the objection I presume is, that the judgment was only interlocutory, and that a final judgment could not be rendered after the death of the defendant. But this is an error. The judgment was final, and to make it absolute no further action of the Court was necessary. The filing of the certificate of the parties authorized to ascertain the sum, upon payment of which the judgment was to be released, was all that was required for the purpose. *Turner* vs. *Plowden* 5 *G. & J.*, 52. The exception to this claim will therefore be overruled.

———

[The Chancellor then passed an order, referring the cause to the Auditor, the terms of which are stated in the following opinion, delivered upon a further hearing of the case.]

———

The Chancellor :

In the order passed by this Court on the 27th of July, 1850,

this cause was referred to the Auditor, with directions to state a final account, in which the plea of limitations as against claims numbered 4 and 6, was to be allowed in favor of Louis Mackall, Junior, the party relying upon the plea. And with reference to claim No. 5, that likewise was to be excluded so far as said Louis Mackall was concerned, unless it should be sufficiently proved at the time of stating the account, and for the purpose of enabling the claimant to supply the required proof, depositions upon the usual notice were authorized to be taken and filed in the Chancery office, on or before the 20th of the ensuing September. No proof having been taken under this authority, the Auditor has excluded the claim, and one of the questions now submitted for decision, is whether he was right in doing so.

It certainly was the opinion of the Court, when the former order was passed, that the proof in support of this claim was insufficient, and the Auditor was quite right, therefore, in excluding it, no additional evidence being offered in its support. I do not now understand it to be contended by the counsel for the claimant, that the *ex parte* deposition of Mr. Sollers is admissible, and it appears to me too plain for argument, that the certificate of Mr. Mitchell standing alone (conceding it to be admissible for any purpose which may, perhaps, be well doubted), is sufficient to establish this claim, because it does not establish the indispensable fact that the single bill ever existed as a genuine instrument.

And I may also now take occasion to say, as not wholly inappropriate, in view of the argument which has been made on behalf of the claimant, that I am quite satisfied that none of the depositions filed in support of these claims, 4, 5, and 6, are admissible. That of Dr. Parker is clearly inadmissible, as having been taken without notice, or anything that can be considered as amounting to notice; and those of Denton and Somerville not appearing to have been taken according to notice. The notice was that the depositions would be taken on the 12th of June, 1850, at the hour of 12 o'clock, M., at the *residence of John Somerville*, and although they appear

upon their face to have been taken on the *day mentioned*, they do not appear to have been taken *at the place* designated in the notice, which in my opinion is a fatal objection. I am not by any means prepared to say that it should appear upon the face of a deposition, that it was taken at the *hour* mentioned in the notice. In the case of *Calvert* vs. *Coxe*, 1 *Gill*, 95, the defendant was notified that the deposition of Mr. Swann would be taken at his dwelling-house on a day mentioned, between the hours of 12 at noon, and 6 in the afternoon; and the return of the commissioners stated that they had taken the depositions on the day mentioned, and at the place mentioned, but without saying between the hours designated in the notice, was held to be sufficient, and the deposition was admitted.

But in the case of *Collin's, lessee,* vs. *Elliott,* 1 *H. & J.*, 1, the General Court decided "that it ought to appear by the depositions themselves that they were taken agreeably to notice, both as to *place* and *time*, or they cannot be received as evidence, and that proof could not be admitted to show that they were in fact taken according to notice," and this decision was, on appeal, affirmed by the Court of Appeals. Sustained by this authority, and by the reason of the thing, I am of opinion, that the exceptions to the depositions of Denton and Somerville are well taken, and that they cannot be read in evidence.

This disposes of the case, except with regard to claim No. 45, which was not noticed in the former report of the Auditor, under an impression that it was the same as claim No. 4. It turns out now to be a different claim, and is set up by Robert J. Young, administrator *d. b. n. c. t. a.*, of Anne Mackall, and is founded upon the two sealed notes of the deceased, Thomas Mackall, one of which bears date the 24th of December, 1829, and payable on the 24th of December, 1834, and the other on the 22d of March, 1833, and payable on the 22d of March, 1835. These claims were filed on the 24th of October, 1849, being more than fourteen years after the maturity of the last of them, and they are consequently barred by limitations, pleaded against them by Louis Mackall, Junior, unless there be

found something in the record to rescue them from the opera-
tion of the plea.

It appears that on the 26th of August, 1839, Joseph W.
Reynolds, as executor of Anne Mackall, filed his bill in this
Court against the said Thomas Mackall, charging, among other
things, that these two sealed notes had, upon the death of the
said Anne, come into the possession of the said Thomas, which
he had retained and converted to his own use, and praying for
a discovery, and an account, and for general relief.   Thomas
Mackall answered this bill on the 26th of February, 1840, in
which he admits his being in possession of the notes referred
to, explains the manner in which he acquired the possession,
and exhibiting copies of the notes, offers to deliver them up to
the complainant, Reynolds, upon his settling with him for his
distributive share, as a legatee under the will of the said Anne
Mackall, who was his sister.   No further proceedings appear
to have been had in that case, which abated by the death of
the complainant, Reynolds, in 1842 ; and the question now is,
whether the answer of Thomas Mackall to this bill precludes
Louis Mackall, Junior, claiming, as one of the heirs-at-law of
said Thomas, from relying upon the plea of limitations in the
case now under consideration ?

The question is not whether, if the suit instituted by Rey-
nolds had been revived and carried on, Mackall's representa-
tives would have been permitted to put in the plea of limitations
after he had in his answer, upon the terms therein mentioned,
offered to surrender the two notes, and come to an adjustment,
but whether, in this case, which is a proceeding to sell the real
estate of Thomas Mackall, for the purpose of making partition
among his heirs-at-law, one of those heirs may not defend his
proportion of the proceeds of the estate against this claim, by
interposing the plea ?

The bill filed by Reynolds, and the bill in this case, are en-
tirely distinct proceedings, having no sort of relation to, or
connection the one with the other.  And the bill, and the answer
in the former case, can only be used as evidence in this.   It
cannot be used as an estoppel here, however it might operate

in the cause in which the answer was filed.   Here the answer is evidence, and evidence only, and establishes nothing more than the existence and genuineness of the notes in question, and the willingness of the defendant, at that time, to give them up to Reynolds, and settle with him, upon receiving his share of his sister's estate.

But this answer, containing these admissions, and expressing a willingness thus to settle, was filed on the 26th of February, 1840, and from that time until the 24th of October, 1849, a period of upwards of nine years, nothing has been done.   Considering the answer of Thomas Mackall as evidence, and amounting to an admission of the genuineness of the notes, and even an absolute promise to pay them, it could have no greater effect than to give a right to sue on the promise, and to offer the notes in evidence, as a sufficient inducement or consideration for it.   It could not revive the remedy upon the sealed notes, when barred by the statute of limitations, as has been repeatedly adjudicated by the Court of Appeals, as shown by the authorities cited in the former opinion.   The action upon the promise must be in *assumpsit*, and three years bars such an action ; and consequently, as more than nine years have elapsed from the filing of the answer containing the promise (if it does contain one), to the filing of the claim in this case, the statute, in my opinion, is a bar.

Considerations of hardship have been pressed upon the Court, and to such considerations, when at liberty to listen to them, I by no means profess to be insensible.   But I sit here not to make, but to administer the law, according to my best judgment, as I find it enacted by the Legislature, or settled by the Courts ; and believing that this claim is obnoxious to the plea of limitations, which has been relied upon by one of the representatives of Thomas Mackall, and having no power to deny him a right which the law gives him, it is my duty to give him the benefit of his plea.   The propriety of relying upon it is for him, and not for me, to decide.

It has been urged in the argument, that upon these transactions between Thomas Mackall and his sisters, Ann and Anne

R. G. Mackall, there is impressed the character of a trust, and that for that reason they are not liable to be defeated by the plea of the statute of limitations. I am firmly convinced, however, that this position cannot be maintained. The whole doctrine upon this subject of trusts was most elaborately discussed by Chancellor Kent, in the case of *Kane* vs. *Bloodgood*, 7 *Johns. Ch. Rep.*, 90, who, after a critical and searching examination of the authorities, came to the conclusion, that "the trusts intended by the Courts of Equity not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of Courts of Equity." The rule deduced by the Chancellor from a review of the authorities in that case is, "that the trusts which are not within the statute are those which are the creations of the Court of Equity, and not within the cognizance of a Court of Law; and that as to those other trusts which furnish causes of action at law as well as in equity, the statute is, and in reason ought to be, as much a bar in one Court as the other; that is, when the jurisdiction is concurrent, and the party is at liberty to proceed in either Court, as in cases of account, where a bill for an account may be brought in equity, or an action of account at common law, the statute is equally a bar in both Courts. In all such cases, the Courts of Equity, though not within the words of the statute, adopting by analogy the time prescribed by the Legislature as a fit and just period as a bar in equity." And in the case of *Kane* vs. *Bloodgood*, a bill for dividends in an incorporated company was adjudged to be barred by the statute, not having been brought within six years after the right of action accrued, that being the period of limitations at law. Equity in that case, acting by analogy, and in obedience to the statute, and, as the Chancellor declared, upon established principles which could not be disregarded.

The principle settled by the case of *Kane* vs. *Bloodgood*, so far from being shaken, is affirmed by the Court of Appeals of this State in *Green and Wife* vs. *Johnson and Wife*, 3 *Gill & Johns.*, 389. The clear doctrine of this last case is, that so

soon as the cause of action accrued, whether it be the case of a trust or not, if it be a fit subject for a suit at law as well as in equity, the statute of limitations begins to run. A trust, to be exempt from the operation of the statute, must be a continuing subsisting trust. When it ceases so to be, or expires by its own limitation, or is put an end to by the act of the parties, and is cognizable at law as well as in equity, it is exposed to the operation of limitations to the same extent as if the exclusive jurisdiction was at law.

Now, tested by this principle, what becomes of the objection to the operation of the statute in this case? Is it possible successfully to maintain that the dealings between Thomas Mackall and his sisters gave rise to one of those trusts which fall within "the proper, peculiar, and exclusive jurisdiction of Courts of Equity?" That out of those transactions there springs a technical continuing trust, the mere creature of a Court of Equity, and not within the cognizance of the Courts of Law? For unless this be the case, the selection of a Court of Equity for the assertion of the claims, will not save them from the effect of the statute. The claims in question are founded, some of them, upon the sealed notes of Thomas Mackall, payable to his sisters, and one of them on an open account for negro hire. Can it be possible to contend that actions at law might not have been brought upon these, and upon the open account against Thomas Mackall? That upon maturity of the notes, and the expiration of the time for paying the hire, the causes of action at law were not complete, and suits at law might not have been maintained? Why, assuming that there was a trust originally (which assumption, however, I by no means admit to be correct), did it not expire by its own limitation when the notes fell due? And can any one doubt that the Courts of Law could have entertained jurisdiction to enforce the payment of the money? So far from doubting the jurisdiction of the common law Courts, is it not quite clear that they were the proper and peculiar Courts to be resorted to, and that Courts of Equity would have refused to interfere, unless some special grounds, not inherent in the contracts themselves, could have been shown?

I am, therefore, of opinion that these claims cannot be saved from the operation of the statute upon this ground.

Some discussion was had at the bar with reference to the effect of an agreement, signed by the counsel of Louis Mackall, Jr., and the executor of Ann R. G. Mackall, and filed on the 17th of October, 1849. Prior to this agreement, that is, on the 21st of the preceding July, an order had been passed, ratifying so much of the report of the Auditor of the 17th of the preceding month of May, as related to her claims, numbered 3, 5, and 6, and to the balances distributed to the heirs-at-law of Thomas Mackall; and, by the agreement in question, which admitted that these claims were allowed, with the assent of the counsel for said Louis Mackall, Junior, under an erroneous impression that the objections of his client to said claims had been removed, it was among other things agreed, that so much of the Chancellor's order as related to said claims should be rescinded, and that such claims should stand as before such order; and, therefore, on the same day an order passed accordingly.

It is insisted now, that, upon the true construction of the stipulation, " that the said claims should stand as before such order," the defendant, Louis Mackall, Junior, cannot be permitted to rely upon the plea of limitations. Such, however, is not my understanding of the effect of this agreement. The agreement, and the order of the Court passed in pursuance of it, placed these claims in the same situation, in all respects, in which they stood before the order of the 31st of July, 1849, ratifying as to them the report of the Auditor, and if, prior to the passage of that order, they were liable to the plea of limitations, they became equally liable when it was rescinded, because, by the terms of the agreement, they were to stand as they stood before the order. The case of *Welch* vs. *Stewart*, 2 *Bland*, 42, states, I think, the rule correctly, and shows that the statute of limitations may be presented as a defence at any time after the claim has been filed or brought before the Court, either before the case has gone to the Auditor, or after he has made a report on it.

But suppose the ground now taken by the solicitors of Ann

R. G. Mackall be correct, and these claims are to stand or fall upon the pleadings and proofs as they stood at the time of the agreement, and when the order upon it passed, how could that benefit the executor? If the agreement precluded the one party from interposing a new objection to the claim, it must have the effect also of precluding the other party for offering new proof in its support. The stipulation must certainly be mutual and reciprocal, and binding upon both parties or upon neither. It never would do to say to Louis Mackall, Junior, you shall not be permitted to set up a new defence to these claims, but the opposite party shall be at liberty to sustain them by additional evidence. If the claims are to be finally passed upon by the Court precisely as they stood when the agreement was filed, and order upon it passed, then their fate must depend upon the state of the proof at that time.

It cannot be doubted that Louis Mackall, Junior, had a right, notwithstanding the agreement, to insist that the claims were not proved, and to call upon the Court to say whether they were fully proved or not. This he did by his exceptions filed on the same day with the agreement, and at the same time he insisted on the defence of limitations. Now, conceding, for the sake of the argument, that the plea of limitations should be shut out in consequence of the agreement, and that these claims are to be allowed or rejected according as they stood at the time, they must inevitably be rejected, there being no pretence that they were *then proved.* The evidence relied upon to sustain them having been subsequently taken and returned to this Court, on the 20th of June, 1850, eight months after the agreement was filed, it would be strange, indeed, if the holder of these claims could be permitted to rely upon the proof taken since the order, when he insists that, according to the order, the parties were required to abide the judgment of the Court as the claims stood at the time, and, of course, upon the proof then in the case.

The report of the Auditor of the 25th of November, 1850, is approved of, in so far as it excluded No. 5, and the other claims excluded, except claims 40 and 41, the objections to which have been withdrawn, as not proved, or as otherwise

barred, and in so far as it gives to Louis Mackall, Junior, the benefit of the plea of limitations, relied upon by him as against claims Nos. 4 and 6. But the said report is not approved of, in so far as it allows claim No. 45 as proved and not barred, it being my opinion, for the reasons stated, that it is barred by limitations, and that the benefit of the statute of limitations must be given to Louis Mackall, Junior, the party relying upon it.

RANDALL, for the Claimants.

ALEXANDER, for the Exceptant, Louis Mackall, Junior.