This case is presented upon a second appeal. The first appeal is reported in 127 Md. 12. The suit in that case was brought for the breach of an alleged contract as set out in the *Page 200 
declaration filed in the case. We held on the former appeal, that the alleged contract was unenforceable because of its indefiniteness and vagueness in the essentials stated, in the opinion, and being invalid, it would not support an action by the plaintiff for a recovery. It was also said in the course of the opinion, that if the facts are as testified to by the appellee and his witnesses, the plaintiff was not without a remedy, because independently of the alleged contract, the plaintiff "has a right of recovery for the services rendered for the benefit of the appellant, the W.B. and A. Electric R.R. in securing the lease from his aunt for it, as well as compensation for the surrender of his lease to the premises, if he had a lease that had a value." The judgment of the Court below, on the former appeal, was reversed and the cause was remanded in order to allow the appellee an opportunity to amend his declaration so as to conform to the views expressed, or to dismiss that action and institute a new suit for the recovery of such compensation "as shall be found to be due him for what he did towards the securing of the lease and the surrender of his own lease and possession, whichever he shall prefer."
The case was remanded to the Circuit Court for Howard County, and the mandate filed in that Court on the 21st of January, 1916.
On the 6th of March, 1916, an amended declaration was filed containing seven counts. The first and third being the usual common counts in assumpsit, the second, "And for work done and services rendered by the plaintiff for the benefit of the defendant," the fourth, fifth, sixth and seventh counts are special counts.
The fourth count alleges that the defendant, desiring to obtain the property at College avenue and Bladen street, on or about February 7th, 1913, employed the plaintiff to negotiate for a purchase or lease of the same, and that in pursuance of said employment by the defendant, the plaintiff began negotiations with the owner of said property, which negotiations *Page 201 
resulted in a lease to Robert Moss on the 25th day of February, 1913, for a term of ten years, with an option to renew same for another term of ten years, which lease was assigned to the defendant on the 27th day of March, 1913, for which services in negotiating the lease as aforesaid for the defendant, the plaintiff has received no compensation.
The fifth count avers that on February 25th, 1913, the date of the lease to Robert Moss, the plaintiff was, and for a number of years prior thereto had been, in possession of the premises as a tenant, and at the request of the defendant and with full expectation and promise of pay therefor surrendered his tenancy and gave up his possession, and the defendant has not paid him therefor.
The sixth count states that on February 25th, 1913, the plaintiff was and had been for a number of years prior there to employed in conducting a grocery store on a portion of the premises in question, and at the request of the defendant, and with full expectation of compensation therefor, closed out his business and gave up his business, but has not been paid any compensation by the defendant.
The seventh count alleges that the plaintiff on February 25th, 1913, was and for a number of years prior thereto had been conducting a boarding house on part of the premises, and at the request of the defendant and with full expectation of payment therefor, ceased to conduct said boarding house, and the defendant has not compensated him therefor.
The defendant demurred to each and every count of the declaration but the demurrer was overruled.
The plaintiff, upon demand, filed the following as the bill of particulars of his claim against the defendant for services rendered by him from January 1st, 1913, to May 21st, 1913, as follows:
 For services rendered in originating and suggesting the
 advisability, advantages and necessity of the location
 of the defendant and its interests on the corner of
 Bladen St.
 *Page 202 
 and College Ave. in the City of Annapolis, Maryland ........ $5,000.00
 For services rendered in securing lease on property
 located on the west corner of College Ave. and
 Bladen St. in the City of Annapolis, Md .................... 5,000.00
 For services rendered in obtaining possession of said
 property for the defendant:
 (1) In surrender of tenancy ................................ 4,000.00
 (2) In closing out business conducted in storehouse
 and surrender of perquisites ......................... 4,000.00
 (3) In surrender of business conducted in dwelling ......... 1,000.00
 (4) In planning and construction of the remodeling
 of improvements on said property ..................... 1,000.00
 ___________
 $20,000.00

To the declaration the defendant filed four pleas: first and second, that the cause of action did not accrue within three years from the suit, or within three years prior to the 6th of March, 1916, the date of the amended declaration. The third and fourth pleas were the usual general issue pleas of never promised and not indebted as alleged. The plaintiff's demurrer to the second plea was sustained and the case was tried upon a traverse to the first plea and issue joined on the other pleas.
There were seventy-one exceptions reserved to the rulings of the Court, in the course of the trial. Seventy of these relate to the admissibility of testimony and the other to the ruling of the Court upon the prayers. The plaintiff offered one prayer and this was granted. The Court granted the defendant's eighteenth prayer, but rejected its remaining twenty-nine prayers; and the rulings, in overruling the defendant's special exception to the plaintiff's prayer and the refusal to grant the defendant's twenty-nine prayers and the *Page 203 
granting of the plaintiff's prayer form the basis of the seventy-first bill of exceptions.
It is apparent from the record, and an examination of the declaration and the various items and claims set out in the bill of particulars, that the plaintiff sought in this action to recover for matters and undertakings embraced in the contract declared upon in the original declaration and which we held on the former appeal to be invalid and not alone upon a quantummeruit for alleged services rendered in securing the lease from his aunt and the surrender of his own lease. W.B. A.R.R. Co. v. Moss, 127 Md. 22.
There was error in granting the plaintiff's first prayer, because apart from allowing the plaintiff to recover under the evidence for services rendered in securing the lease and for the surrender of his own lease, it instructed the jury that the plaintiff could recover for separate and distinct services, in closing out of his retail grocery business and the surrender of his boarding house business, conducted on the premises, either by previous employment or the acceptance of the plaintiff's agency and the adoption of his acts. This prayer was not only clearly erroneous under our former decision in 127 Md. 22, but is also open to the objection that it directed the jury to allow interest "from such time as the jury may find from the evidence such services were completed to the date of their verdict."
It is the settled practice in this State, except in those cases where interest is allowable as of right, to refer the question of interest to the jury to be allowed in its discretion. Newson v.Douglass, 7 H. J. 417; Baltimore City Pass. Rwy. Co. v.Sewell, 37 Md. 443; Curtis v. Gibney, 59 Md. 131.
The defendant's exception to the rejection of its first, second and third prayers are waived and need not be considered.
The defendant's fourth prayer presented the question of limitations, and the Court was asked to instruct the jury, that under the pleadings the plaintiff could not recover for any services alleged to have been rendered by the defendant *Page 204 
and which were completed more than three years before the filing of the amended declaration, the amended declaration, being filed on March 6th, 1916. The same question was raised by the ruling of the Court, in sustaining the plaintiff's demurrer to the defendant's second plea.
The question as here presented upon the evidence set out in the record, is not free from difficulty.
The suit is in assumpsit upon a quantum meruit for services rendered in obtaining the lease, and surrendering the plaintiff's own lease.
Under all the authorities, the statute of limitations would run against any services rendered and completed by the defendant more than three years prior to the filing of the amended declaration.
In Spencer v. B. O.R.R. Co., 126 Md. 200, this Court said: "The rule is well settled in this State, and in other jurisdictions, that where an amended declaration introduces a new or different cause of action and makes a different claim and demand, it is equivalent to a new suit, upon a new cause of action, and opens the case to the bar of the statute of limitations and the plea is proper and available, and this rule applies although the two causes of action arise out of the same transaction." Hamilton v. Thirston, 94 Md. 253; Di GiorgioCo. v. Stock, 116 Md. 210; Johnston v. District, 1 Mackey, D.C. 428; Union Pacific Ry. v. Wyler, 158 U.S.S. 285.
In Young v. Mackall, 3 Md. Ch. 399, it is said, as soon as the cause of action accrues, whether it be a trust or not, if it be a fit subject for a suit at law as well as in equity, the statute of limitations begins to run. Green v. Johnson, 3 G. J. 390; Hahn v. Claybrook, ante, page 179.
The general rule seems also settled that in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services *Page 205 
can be completed or from the time the event happens. Angell onLimitations, sec. 120; Wood on Limitations, 325-330.
In 25 Cyc. 1065 and 1066, it is said: "`The accrual of the cause of action' means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued and the statute begins to run. So whether at law or in equity the cause of action arises when and only when the aggrieved party `has the right to apply to the proper tribunal for relief.' The statute does not attach to a claim for which there is no right of action, and does not run against a right for which there is no corresponding remedy or for which judgment can not be obtained. The true test therefore to determine whether a cause of action has accrued is to ascertain the time when plaintiff could have first have maintained his action to a successful result. The fact that he might have brought a premature or groundless action is immaterial."
In the case at bar, there is a manifest conflict in the evidence as to when the services of the defendant were completed for which the suit was brought in this case.
The amended declaration, it appears, was filed on the 6th of March, 1916. In the fourth count of the declaration, it is averred, that the plaintiff on or about the 7th of February, 1913, was employed by the defendant to negotiate for the purchase or lease of certain property in the City of Annapolis and the negotiations resulted in a lease of the property to Robert Moss on the 25th of February, 1913, for a term of ten years, with a renewal of another term of ten years and this lease was assigned to the defendant on the 27th of March, 1913.
The plaintiff testified that after his aunt Mrs. Baldwin refused to sell for the stipulated price of $7,500, that he then approached her on the subject of a long term lease and she said she would let him know about it in a few days and she finally did let him know that she would give a lease for *Page 206 
ten years, renewable for ten years more; that as the final outcome of these services, Mrs. Baldwin on February 25th, 1913, and in company with the witness went to the office of Robert Moss and executed a lease for ten years, renewable for another ten years, to Robert Moss, with the understanding that the lease was to be turned over to the defendant, which was done on March 27th following. He also testified upon cross-examination as follows: Q. How long was it from the first visit that you made to Mrs. Baldwin until the lease was procured? A. The first visit was made on February 7th, and the lease was signed on February 25th. Q. And you are charging $1,500 for eighteen days' work? A. Yes, sir. Q. Of course you were not working all that time? A. Yes, sir. Q. On this? A. No, sir; not on getting the lease. Q. You were actively engaged in working all the eighteen days in getting the lease? A. No, sir.
Mr. Robert Moss, a witness for the plaintiff testified that what little representing he did in the transaction, he represented the railway company, that he was employed at the time as local counsel for the defendant company and had represented them for many years, that he did not receive anything for the services rendered in connection with the leasing of the property, that possibly the defendant made him an allowance on his gas bill of a few dollars or so, but not very much, that he was sure it was not over $18.00, that he sent his brother to attend to the lease for the company, because he knew that he was the best one and the only one who could attend to it quickly and efficiently for them, and that his brother was the only person who could get a lease on the property for them. He further testified upon cross-examination that he had no idea as to how many visits his brother paid Mrs. Baldwin in procuring the lease for the company but that the matter was started on February 7th, and was concluded on February 25th, 1913.
It further appears, that while the lease is dated the 25th of February, 1913, the term did not begin until the first day *Page 207 
of April, 1913, and the lease was not assigned by Robert Moss to the company until March 27th, 1913, that the plaintiff did not close out his business until the latter part of March, and under instructions from the company he kept the place open, from April 1st to April 21st, 1913.
Upon this state of facts, we think, the question of limitations in this case is a mixed one of law and fact.
It is well settled that when the evidence is susceptible of more than one interpretation and the facts are disputed or conflicting, the question of limitations is one of fact for the jury, subject to the instructions of the Court as to what in law is sufficient to constitute a bar or to take the case out of the statute. Shipley v. Shilling, 66 Md. 558; Quynn v.Carroll, 10 Md. 197; Guy v. Tams, 6 Gill, 82; Dempsey v.McNabb, 73 Md. 433; 25 Cyc. 1434, 1435, 1436.
There was no error then in the ruling of the Court, in sustaining the plaintiff's demurrer to the defendant's second plea, or in the rejection of the defendant's fourth prayer, in the form it was offered.
The defendant's fifth, sixth and seventh prayers should have been granted. These prayers instructed the jury that the plaintiff could not recover any damages sustained by loss of alleged profits, in either the grocery store business or the boarding house business. The suit was not for loss of profits but for services rendered in securing the lease and in surrendering the plaintiff's own lease.
The defendant's tenth, eleventh, twelfth, thirteenth and fourteenth prayers relate to compensation for alleged services rendered in originating and suggesting the advisability, advantages and necessity of the location of the defendant and its interest on the corner of Bladen street and College avenue, in the City of Annapolis, as a separate and independent undertaking, in addition to the services rendered, in securing the lease. While the tenth prayer was too general to have been granted in the form it was offered, it is too clear for discussion, that the appellee had a right to recover for *Page 208 
only two items of services alleged to have been rendered, assuming the truth of the plaintiff's evidence, and they were as stated on the former appeal, compensation for securing a lease from his aunt for it, and for the surrender of his own lease, if it had a value.
The difficulty and error, on these rulings arose from the plaintiff's declaration and the bill of particulars, wherein he sought to recover for six distinct and separate undertakings and services: first, for suggesting the idea; secondly, for securing the lease; thirdly, for surrendering the tenancy; fourthly, for closing out the grocery store business; and, fifthly, for closing out the boarding house business; and sixthly, for planning and remodelling of improvements on the property.
The Court's ruling was correct on the eleventh and twelfth prayers for the reasons stated in support of the fourth prayer.
The thirteenth, fourteenth, fifteenth, twentieth, twenty-first and twenty-fourth prayers were demurrers to the evidence and were properly rejected in the form they were offered.
The sixteenth and seventeenth prayers again raised the question of limitations and for the reason stated, in the ruling on the fourth prayer, they were properly rejected.
The nineteenth prayer instructed the jury that the plaintiff could not recover for the services rendered in negotiating the lease, more than an amount based on what the jury shall find from the evidence is the usual charges or commission of real estate brokers in Annapolis for negotiating leases. This prayer was properly rejected because it limited the recovery and fixed the usual charge or commission of real estate brokers in Annapolis, as the sole basis of the value of the services rendered in negotiating the lease, and ignored the other evidence bearing on this question.
There was no error in the rejection of the twenty-second prayer, and it is conceded in the defendant's brief, to have been properly refused. *Page 209 
The twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth and thirtieth prayers instructed the jury, that the plaintiff could not recover for certain services alleged to have been rendered by the plaintiff in closing out the store house and the boarding house business and in the planning and construction of certain improvements on the property. These prayers should have been granted and there was error in their rejection for the reason stated in a former part of this opinion.
This brings us to the rulings on the admissibility of evidence. The first, second, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirty-fourth, thirty-eighth and seventieth bills of exceptions are abandoned by the defendant.
It would extend this opinion to an unreasonable length to discuss each exception separately and as it appears from what we have said in discussing the prayers, that there was error in many of the rulings upon evidence, we shall as far as necessary, dispose of the remaining exceptions, set out in the record.
The evidence of alleged loss and profits from the retail grocery business, and the boarding house business; the planning and construction of improvements on the property after it was leased, the closing out of business in the storehouse, and surrender of business in the dwelling house, contained in the third, tenth, thirteenth, twenty-second and twenty-third exceptions and in other exceptions embracing similar evidence was clearly inadmissible and should have been excluded for reasons stated by us in passing upon the prayers.
There was also error in the ruling of the Court in the fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, thirty-second, thirty-third, thirty-six and thirty-seventh exceptions and the other exceptions containing similar testimony.
The issue in the case was not the value and advantage of the property to the defendant, but the reasonable value of the services rendered by the plaintiff in obtaining the property. *Page 210 
The twenty-eighth exception presents the ruling of the Court in allowing the plaintiff to give an opinion estimate of his services and to fix his damages in dollars and cents, for the services rendered in securing the lease. The question and answer is as follows: What is a fair and reasonable compensation for the services, such as you have stated were performed by you in securing the lease for this property for the defendant? Answer: Fifteen hundred dollars.
The plaintiff was a non-expert witness and had no knowledge upon these subjects but was competent to state only facts and not give his opinions. He could have testified as to the nature and extent of the services rendered, the time occupied in their performance and other attending circumstances but not his estimate or judgment of their value. There was no standard fixed and no evidence of what was the usual price charged and received for similar services by other persons. It was the province of the jury to weigh the testimony and to fix the value of the services alleged to have been rendered, upon the evidence in the case.
In Western Union Tel. Co. v. Ring, 102 Md. 677, it is said: "If therefore the evidence set out in the exception now under consideration was intended to be offered as from an expert witness nothing more needs to be said than that it is within the ruling of the case just cited. If the witness of whom the question objected to was asked was not intended to be qualified as an expert then evidence offered was not within the exception to the general rule which excludes opinion testimony — a rule, the limits of which, it is intimated in the opinion just cited, ought not to be enlarged and which we may here say is a most salutary one in its operation as a restraint upon testimony which otherwise too often would be the result more of bias, recklessness of statement, and mere speculation than of judgment calmly and intelligently applied to relevant facts." Giering v.Sauer, 120 Md. 295; Walker v. Rogers, 24 Md. 237; Poe'sPl. Pr., Vol. 1, 584 B. *Page 211 
For the reasons stated, there was also error in the rulings on the defendant's eighth and ninth prayers, and they should have been granted.
There was also error in the rulings embraced in the twenty-seventh, twenty-ninth, thirtieth, thirty-first, thirty-third, thirty-fifth, thirty-sixth, fortieth, forty-first, forty-third, forty-fourth, forty-fifth, forty-sixth, forty-seventh, forty-eighth, fifty-seventh and fifty-ninth exceptions and the other exceptions set out in the record relating to like subjects.
The demurrer to the sixth and seventh counts of the declaration should have been sustained as the plaintiff could not recover under these counts.
The motion to dismiss the appeal will be overruled as the second appeal is properly before us.
For the reasons stated the judgment will be reversed and a new trial awarded.
Judgment reversed, new trial awarded, with costs to theappellant. *Page 212