FELDMAN, ET UX. *v.* GRANGER ET AL. t/a
Granger, Faw and Company

[No. 399, September Term, 1968.]

*Decided October 16, 1969.*

The cause was heard before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*William D. Gould* and *John C. North, II*, with whom were *North & North* on the brief, for appellants.

*T. Hughlett Henry, Jr.*, with whom were *Waller S. Hairston* and *Henry, Henry & Adkins* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This case is before us on appeal from a decision by Judge Clark of the Circuit Court for Talbot County granting defendants' motion for summary judgment in a suit for professional malpractice against an accounting firm on the ground that the plaintiffs' cause of action was barred by the Statute of Limitations. The issue before this Court is the proper date from which the statute begins to run.

The suit below was filed on July 18, 1968, against appellees, Granger, Faw and Company, alleging negligence in the late filing of a document with the Internal Revenue Service. Appellant Mr. Feldman, was the sole shareholder of the Feldman Furniture Company, Inc. For the tax year beginning October 1, 1960, the corporation and its shareholder decided that they would attempt to elect sub-chapter S treatment as a small business corporation. In order to qualify for such treatment it is necessary that within 30 days prior to or after the beginning of a corporation's fiscal year that a Form 2553 be filed with the Internal Revenue Service. Defendants-appellees, the appellants' accountants at the time, went about preparing the Form 2553. There is no dispute but that it was mailed October 31, 1960, between 7:00 and 9:00 P.M.

)

from the post office in Easton, Maryland. It is the procedure at this post office to postmark mail received the evening of one day with the date of the following day. Thus the Form 2553 was postmarked November 1, 1960, 3 :00 A.M.

On November 12, 1960, appellant Feldman was informed that the corporation's election to be taxed as a sub-chapter S corporation had been denied because the November 1 postmark was not within the statutory filing period. Appellants contend that this same day they notified an agent of appellees who assured them there was nothing to worry about. Appellees deny any such notice. In any event, appellants Mr. and Mrs. Feldman claimed the net operating loss of the corporation in the fiscal years 1961 and 1962 against their own personal income.

On January 6, 1964, the Internal Revenue Service sent appellants a statement of their income tax liability from 1958 through 1962. On January 28, 1964, the appellants filed a protest to the statement of liability. On April 20, 1964, the appellants or their agents, held a conference with the Internal Revenue Service regarding the tax liability stated in the declaration filed in these proceedings. On July 22, 1964, the Appellate Division of the Internal Revenue Service assessed a deficiency of $25,428.-06 in back taxes, penalties, and interest. The appellants contested this deficiency in the Tax Court and on August 11, 1967, more than three years after the notice of deficiency, the Tax Court upheld the Commissioner and found that the notice was not filed within thirty days.[1] A tort suit was then filed in the Circuit Court for Talbot County on July 18, 1968. From the trial court's decision granting defendants' motion for summary judgment, the appellants have taken this appeal.

The appellants would have us adopt the date of March 23, 1967, at which time the Tax Court sustained the deficiency assessment made by the Internal Revenue Ser-

---

1. For the opinion of the Tax Court, see *Feldman v. Comm'r*, 47 TC 329 (1967).

vice, as the date when the statute of limitations began to run. They buttress their contention with the argument that it was not until this adjudication that their liability to the federal government for additional taxes had been positively established by the exhaustion of their administrative remedies. If this view prevails their suit against the appellee would have been instituted within the three year period of limitations.

The appellees, to the contrary, relying on their interpretation of the "discovery rule", rather than pressing for the date of the occurrence of the negligent act, contend that limitations began to run on November 12, 1960, the day on which the appellants learned that the appellees had failed to file on time the election form (I.R.S. Form 2553) required by the Internal Revenue Service. The appellees, however, are quick to agree that, while they advance the argument that limitations should have commenced running on November 12, 1960, nonetheless, they will be satisfied should this Court adopt the view taken by the lower court, namely, that the date of July 22, 1964, the day on which the appellants were notified of the assessment of the tax deficiency made by the Appellate Division of the Internal Revenue Service, was the date on which limitations began to run. Either of these latter mentioned dates would place the appellants' cause of action beyond the three year statutory period of limitations.[2]

The appellees in their brief noted that this Court had adopted the "discovery rule" in medical malpractice cases, citing *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966) and *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917) ; however, their brief was filed before the publication of our opinions in *Mattingly v. Hopkins,* 254 Md. 88, 253 A. 2d 904 (1969) and *Mumford v. Staton,* 254 Md. 697, 255 A. 2d 359 (1969), wherein we ap-

---

2. Maryland Code (1968 Repl. Vol.), Article 57, provides that "all actions of account, action of assumpsit, or on the case, * * * shall be commenced, * * * within three years from the time the cause of action accrued; * * *."

plied the "discovery rule" to professional malpractice cases involving a surveyor and an attorney, respectively.

The appellants would eschew the "discovery rule" as applied by this Court in *Mumford, Mattingly, Waldman* and *Hahn,* and urge upon us the proposition that "no claim accrues for the purpose of commencing the running of the statute of limitations until *all events have occurred which fix liability and upon which claimant would be entitled to sue.*" (emphasis supplied) *Stevanus v. U. S.,* 149 F. Supp. 655 (1957). Actually, the appellants in so urging are contending that the statute did not start to run until they had exhausted all administrative remedies to obtain relief from the appellees' negligence.

In *Mattingly,* we recognized the problem frequently encountered in determining when the statute of limitations commences to run, stating:

> "* * * Much has been written as to when 'limitations' should start to run. Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm. Sometimes the happening of the wrong, the knowledge of it and the maturation of the harm are simultaneous. When this occurs the recognition of the accrual of the cause of action is simple, when these elements happen sequentially it can become complex. * * *." *Id.* p. 92

> * * *

> "* * * We see no basic distinction between the application of the 'discovery rule' in a medical malpractice case and in the instant case, which assuming that engineering is a profession, is in essence a professional malpractice situation. * * *." *Id.* p. 94

> * * *

> "In the case at bar, Mr. Mattingly, who is a

practicing member of the Maryland Bar, certainly had strong reason to believe that he had sustained legal harm when he noted the discrepancy between the placement of the iron pipes on the ground and their location on the plats in the summer of 1959 and this was unquestionably confirmed when the appellees correctly replaced the iron pipes in May or June of 1960. We think the mistake caused by the appellees' negligence was discovered at that time or with the exercise of reasonable diligence should have been discovered. He knew that he had made conveyances of property based on the location of the iron pipes on the ground to several individuals during the years 1953 to 1959 and that the error on the ground thus compounded by the adverse conveyance he had made, not only cast a cloud on the title to his own land but those of his grantees, if not in law, then certainly in equity.

"The appellant contends that until the Houston case and that of Branson, another grantee, were decided against him, that he had not been damaged and that the statute of limitations does not start to run until the maturation of damages. This is certainly the law in some jurisdictions. *Fort Myers Seafood Packers v. Steptoe & Johnson*, 381 F. 2d 261 (D.C. Cir. 1967). However, we think that the case at bar clearly comes within the 'discovery rule' as established by *Hahn, supra,* and *Waldman, supra.* Both *Hahn* and *Waldman* fall short of bringing this Court within the ambit of those jurisdictions which recognize that limitations commence to run only after the maturation of harm. (Although, in both *Hahn* and *Waldman* there had been substantial injury to the plaintiff at the time of the discovery of negligence.) However, assuming, without deciding, that in addition to

the discovery of negligence, damages must also have accrued to trigger the running of the statute, we are of the opinion that the Mattinglys had sustained damages when Mr. Mattingly discovered the faulty survey; he certainly could have maintained an action to recover expenses incurred due to the erroneous survey in June, 1960." *Id.* p. 95, 96.

From the above quotation from *Mattingly,* it is apparent that we again followed the "discovery rule," although there were facts in that case which may have justified the application of the maturation of harm rule, had we felt that it was in keeping with what this Court had done in *Hahn* and *Waldman.* In *Mumford,* we again applied the "discovery rule" although in that case we noted that the discovery of the negligent act was simultaneous with the maturation of harm.

In the instant case the appellants are seeking to have an element considered, which would in many cases, and certainly in this case, go beyond either the discovery of the negligent act or the maturation of harm, namely, that the limitation period should not start to run until the plaintiff has exhausted all available administrative remedies. However, just as this Court reasoned in *Mattingly,* and we think on sound principle, we are not of a mind to go beyond the "discovery rule." If we were to do otherwise, the first question we would have to answer would be, why stop with the exhaustion of administrative remedies? Why not require the exhaustion of all available legal remedies before the period of limitations commence to run against the plaintiff? As was aptly noted by Judge Clark in the opinion of the lower court:

"* * * They [the appellants] contend that had they won [in the Tax Court], it would not have been necessary for them to sue the Defendants and that therefore the statute should not start to run against subject cause of action until the Tax Court of the United States handed

down its decision. If the Court were to adopt this contention, why stop at the Tax Court of United States. The Plaintiffs, as well as any other taxpayer similarly situated, may appeal from the decision of this Court on up the line to the Supreme Court of the United States, if they want to spend the money to do so, and thus the Defendants could be kept in a state of breathless apprehension for years during which time memories have faded, important evidence could be lost and witnesses for the defense could have died or disappeared. On the other hand, it would have been a simple matter for the Plaintiffs to have filed their suit against the Defendants within the three year period from the time the Commissioner assessed the deficiency and the same could have been held in abeyance pending the outcome of the taxpayer's suit against the Government."

The lower court relied heavily upon the case of *Atkins v. Crosland,* 417 S.W.2d 150 (Tex. 1967), which was cited and quoted at some length with approval by this Court in *Mumford, supra.* In *Atkins,* a case similar in facts to the instant case, the plaintiff was suing an accountant for malpractice. The accountant failed to obtain the required permission from the Internal Revenue Service to change the method of accounting used by his client from a cash method to an accrual method, as a result of which the client sustained a tax liability in the amount of $12,282.30. The Court held that the statute of limitations commenced to run when the tax deficiency was assessed by the Internal Revenue Service. Although in *Atkins,* the aggrieved taxpayer took no appeal to the Tax Court of the United States, we feel this fact is immaterial; certainly it is immaterial under the application of the "discovery rule," and in *Atkins,* the Court held that it was when the assessment for the deficiency was made that legal harm accrued to the plaintiff, although

the Court also found that it was then that the tort had been completed.

Again, focusing attention on the date of July 22, 1964, when the appellant received the notice of the tax deficiency in the amount of $25,428.06 from the Appellate Division of the Internal Revenue Service, we are of the opinion that any reasonable and prudent man, being in the place of the appellants, would have known or certainly should have known at that time, that he had sustained legal harm as of that date, if not before. The appellants had by this time discharged the appellees as their accountants and they had known for over three and a half years that the Internal Revenue Service disagreed with their position. Certainly, when they received notice of the tax deficiency assessment on July 22, 1964, if they had not before, it became necessary for them to incur the expense of retaining legal counsel. We think, at the very least, from the date of this assessment of the tax deficiency by the Internal Revenue Service the statute of limitations began to run adversely to their action against their accounts.

It is true that in an income tax case, such as is involved in the present litigation, the exact amount of deficiency may be subject to negotiation at various conference levels so that the damage might be altered prior to the notice or assessment of deficiency, but as in the *Mattingly* case, and as in other tort cases, the exact amount of damages sustained may not be known at the time of the discovery of the wrong. However, in our opinion this is not a sufficiently sound reason to postpone the accrual of the action or toll the running of limitations when other reasons grounded in public policy are considered.

It would be of little purpose to discuss the cases cited by the appellant in support of their contention; it suffices to say that these cases do not, as do the Maryland cases previously decided by this Court, adhere to the "discovery rule." We think this Court has followed the policy which is most wise. "* * * A rudimentary pur-

pose of these statutes is to afford protection to defendants against 'stale claims' after a period of time which ought to be sufficient for a person of ordinary diligence to bring an action." "Limitations In Professional Malpractice Actions," 28 *Maryland Law Review,* 47, 49 (1968). We would also note that in the article "Developments in the Law—Statute of Limitations," 63 *Harvard Law Review,* 1177 (1950), it is stated:

> "* * * The primary consideration underlying such legislation is undoubtedly one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.' " *Id.* p. 1185

In view of what we have stated in this opinion we think that the application of the "discovery rule," as here applied, gives to the individual exercising reasonable diligence the full benefit of the statutory period in which to file suit, while at the same time protecting the defendant from "stale claims," as was intended by the statute.

*Judgment affirmed, appellants to pay costs.*