## STEELWORKERS HOLDING COMPANY
### ET AL. *v.* MENEFEE ET AL.

[No. 30, September Term, 1969.]

*Decided November 6, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Peter G. Angelos* for appellants.

*George W. McManus, Jr.,* with whom were *Richard Baldwin Moore, Franklyn J. Weinberg* and *Philip Z. Altfeld* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Steelworkers Holding Company and United Steelworkers of America, AFL-CIO, Local Union No. 2610 (the Steelworkers), the plaintiffs below, have appealed from a summary judgment entered in favor of the defendants, Lawrence A. Menefee, Baltimore Contractors, Inc., and Reliance Insurance Company.

The facts which gave rise to the controversy can be briefly told. In 1959, Baltimore Contractors, Inc., undertook the construction of a building, designed by Menefee, for the Steelworkers. Reliance Insurance Company wrote the performance bond for the job, which was completed in December of 1960. Sometime in March or

April of 1965, the officers of the Steelworkers first detected an unexplained movement of the metal panels which formed the front wall of the building. This condition proved, on investigation, to have been caused by improper anchorage of the panels to the frame of the structure. Another contractor was engaged to make the necessary repairs, and some three years later, on 3 May 1968, the Steelworkers brought suit against Menefee, Baltimore Contractors, Inc., and Reliance Insurance Company in the Superior Court of Baltimore City.[1] The counts against Menefee and Baltimore Contractors, Inc., sounded in negligence; that against Reliance Insurance Company, in contract. After a flurry of pre-trial discovery all three defendants specially pleaded limitations,[2] and then moved for the entry of summary judgments on this ground.

As we see it, the lower court properly granted the motions. The court had before it the deposition of John Edward Ruke, in 1965 the financial secretary of Local 2610, who said that he first noticed the movement of the wall in late March or early April of 1965; that two days later, an inspection was made by George Schott, a representative of George Bensil Company, the contractor which made the repairs, and B. A. Wiggins, of J. L. Faisant & Associates, Inc., a firm of consulting engineers apparently engaged by the Steelworkers; that Schott "cut the holes in the ceiling and checked what was holding it"; and that the repair work was commenced the day after the inspection and took three weeks or a month.

The Steelworkers argue, quite correctly, that their right of action accrued not on the date of the alleged wrong, but upon the date of discovery of the alleged wrong. As Judge Finan, speaking for this Court in *Mat-*

---

1. Suit against a fourth defendant was non-prossed without objection from the Steelworkers.
2. Maryland Code (1957, 1968 Repl. Vol.) Art. 57 § 1: "All actions of account, actions of assumpsit, or on the case * * * shall he commenced, sued or issued within three years from the time the cause of action accrued; * * *."

*tingly v. Hopkins,* 254 Md. 88, 253 A. 2d 904 (1969) said:

> "Like most general rules of law, those pertaining to 'limitations' become less than profound when an attempt is made to apply them to specific cases. Much has been written as to when 'limitations' should start to run. Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm. Sometimes the happening of the wrong, the knowledge of it and the maturation of the harm are simultaneous. When this occurs the recognition of the accrual of the cause of action is simple, when these elements happen sequentially it can become complex. Furthermore, there are nuances of difference in the accrual of the cause of action in cases arising out of actions *ex contractu,* as distinguished from actions *ex delicto,* and a further hybridization of actions arising out of professional malpractice and otherwise." 254 Md. at 92-93.

Maryland has applied the discovery rule in cases involving professional malpractice by surgeons for more than 50 years. *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966) (physician); *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917); Comment, *Limitations in Professional Malpractice Actions,* 28 Md.L.Rev. 47 (1968). More recently the rule has been extended to other areas of professional malpractice. *Feldman v. Granger,* 255 Md. 288, 257 A. 2d 421 (1969) (accountant); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A. 2d 359 (1969) (attorney); *Mattingly v. Hopkins, supra* (civil engineer). We have no hesitancy in saying that the same rule could be availed of in the case before us by Mr. Menefee, an architect. As regards Baltimore Con-

tractors, Inc., we have previously indicated that the discovery rule may be applied to a case involving faulty construction. *Callahan v. Clemens*, 184 Md. 520, 41 A. 2d 473 (1945); see also, *Mettee v. Boone*, 251 Md. 332, 247 A. 2d 390 (1968). Since Reliance Insurance Company could be held on its bond only for defaults for which Baltimore Contractors, Inc., was answerable, we need not reach the question of when a cause of action accrues on the performance bond, but see *Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449 (D.Md. 1962) and *Northwest Airlines, Inc. v. Glenn L. Martin Co.*, 161 F. Supp. 452 (D.Md. 1958).

The Steelworkers argue that a proper application of the discovery rule would fix the commencement of the running of limitations at 7 May 1965, the day when the following letter from J. L. Faisant & Associates was received:

"Gentlemen:

"At the request of Mr. Angelos, we visited your building at 540 Dundalk Avenue to investigate a report of the movement of the panel walls.

"Mr. Ruke reported that the panel walls in his office deflected about one inch at the floor line during a strong wind. The plaster at the junction of the walls and ceiling has cracked.

"In order to determine the anchorage for the panels, Mr. George Schott has cut holes in the ceiling at several places. The points checked revealed light sheet metal brackets at some mullions and no anchorage at others. Obviously, they are not adequate in either number or size.

"Mr. Schott is installing new brackets made from $1\frac{1}{4}$ x $\frac{1}{8}$ steel bars. It is recommended that two brackets be provided for every 50 square feet of panel. Typically this will be 2 brackets at each mullion at the floor line.

"If we may be of any further service to you, please do not hesitate to call us.

> Very truly yours,
> J. L. FAISANT & AS-
> SOCIATES, INC.
> B. A. WIGGINS"

A careful reading of this letter, however, makes it clear that it was written after the discovery and after the repairs had commenced.

As we see it, the time of discovery was the moment when Schott cut holes in the ceiling and found that the wall panel had not been securely fastened to the structural frame.

The court below was obviously correct when it found that the Steelworkers' right of action accrued and limitations began to run in March or April of 1965 when the defect was discovered and not on 7 May 1965, when the engineers' formal report was received. The statute had certainly run by the time the declaration was filed on 3 May 1968.

> *Judgment affirmed; costs to be
> paid by appellants.*