# HOWARD W. POFFENBERGER, JR. *v.* DONALD E. RISSER ET AL.

[No. 20, September Term, 1980.]

*Decided October 10, 1980.*

The cause was argued before MOORE, LOWE and WILNER, JJ.

*K. S. Mackley* and *Russell Macks,* with whom was *Darrow Glaser* on the brief, for appellant.

*Conrad W. Varner* for appellees.

LOWE, J., delivered the opinion of the Court. MOORE, J., filed a dissenting opinion at page 607 *infra.*

Whenever a limitations statute is invoked successfully a wrong is likely to survive without remedy for he who has been harmed. It is generally known in Maryland that for the most part a statutory bar will fall after three years. The real problem is three years from when.

Md. Code, Cts. & Jud. Art., § 5-101 tells us that:

> "A civil action at law shall be filed within three years *from the date it accrues ....*" (Emphasis added).

Obviously then, the date of the action's accrual is the crucial determination in applying limitations. See *Young v. Mackell,* 3 Md. Ch. 398, 408 (1850). The accrual of a cause of action means a right to institute and maintain a suit; *i.e.,* whenever one person may sue another a cause of action has accrued and the statute begins to run, *W., B. & A. Elec. R. R. Co. v. Moss,* 130 Md. 198, 205 (1917). Unfortunately, the Legislature has not provided us with much guidance as to when an action accrues. The Court of Appeals, however, is not subject to that complaint.

Although various jurisdictions have differing rules on when a cause of action accrues — *e.g.,* when the wrong is committed, when it is discovered or when it matures into a harm — Maryland professes to adhere to a general rule that limitations begin to run from the time of the wrong rather than when the wrong is discovered or harm therefrom matured. Advising the United States District Court for the District of Maryland of the accrual date of a cause of action for negligence and strict liability, the Court of Appeals stated that:

> "In Maryland, the general rule is that limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time the wrong is discovered." *Harig v. Johns-Manville Products,* 284 Md. 70, 76 (1978), citing *Killen v. Geo. Wash. Cemetery,* 231 Md. 337 (1963).

This rule, however, seems to have been honored more in its breach than by its observance. Not only has the Legislature

provided exceptions to this rule, see, *e.g.,* Cts. & Jud. Art., §§ 5-201, 5-203, but, as pointed out in 28 Md. L. Rev. 47, 60 n. 100 (1968), at least one writer has maintained that Maryland was the first state to adopt the discovery test,[1] see 12 Wyo. L.J. 30, 34 (1957), enunciating it initially in the medical malpractice case of *Hahn v. Claybrook,* 130 Md. 179 (1917), on January 31, 1917. Only three days later the Court of Appeals applied another exception in the *W., B. & A. Elec. R. R. Co.* case, *supra,* which we refer to as "the continuation of events" theory.[2] *Harig, supra* at 76.

Although those exceptions have been repeatedly applied with varying degrees of frequency — the latter sparingly, the former profusely — it wasn't until 1978 that the Court of Appeals came up with what we now clepe the "inherently unknowable" refinement of the discovery exception to the general rule. See *Harig, supra* at 80. This was seemingly reasoned to break the confines of the discovery rule from its professional malpractice bonds,[3] *cf. Mattingly v. Hopkins,* 254 Md. 88, 94-95 (1969) (case involving negligent land survey construed as one of professional malpractice so as to apply discovery rule), extending it to a cause of action for a latent disease based upon negligence or strict liability.

While the Court of Appeals in *Harig* espoused as the general rule that the limitations statute runs from the date of the wrong, it was moving even then more toward the discovery rule, although with seeming hesitancy. The plumb line drawn by the Court seems to extend beyond that

---

1. Briefly stated the discovery test is that the statute begins to run from the time of the discovery of the alleged injury, or when it should have been discovered by the exercise of due diligence. Ironically then, the more obvious the wrong done, the less chance of avoiding the statutory bar to recovery.

2. "The general rule seems also settled that in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens." W., B. & A. Elec. R. R. Co. v. Moss, 130 Md. 198, 204-205 (1917).

3. *Harig* acknowledged the generally accepted view that but for statutory applications of the discovery exception (see, *e.g.,* Cts. & Jud. Art., § 5-203 where a party is kept in ignorance by fraud), the discovery rule was applied almost exclusively to professional malpractice cases.

established by the Legislature. The latter applies the discovery rule if a party is kept in ignorance of a cause of action by fraud.

> "If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code, Cts. & Jud. Art., § 5-203.

The Court of Appeals in *Harig* set forth another context for application of the discovery rule:

> "In cases where the initial injury is *inherently unknowable,* however, the statute of limitations should not begin to run until the plaintiff should reasonably learn of the cause of action. . . . Avoiding possible injustice in such cases outweighs the desire for repose and administrative expediency, which are the primary underpinnings of the limitations statute." *Harig, supra* at 80 (emphasis added).

The distinguishing factor which now invokes the discovery rule exception, rather than the general rule in the ordinary tort case (where lack of knowledge of the wrong is immaterial), seems to be whether the plaintiff could have known of the tort even before damage is manifest. Usually some harm or potential harm will be apparent to a reasonably diligent plaintiff and, if such is the case, the general rule will apply. *Id.*

In the case at bar the following undisputed facts are significant:

1. Appellant and his then wife, after viewing the premises, purchased a lot in an undeveloped subdivision from a developer in August of 1972 subject to a residential setback restriction of 15 feet from side lot lines.

2. Within a month appellee Risser contracted to

build a house for appellant on the lot, undertaking to "center" the house thereon.

3. The Poffenbergers occupied the house beginning January 1973.

4. The Poffenbergers divorced and appellant's wife conveyed her interest to him on August 24, 1974.

5. In March of 1976, the neighboring lot was surveyed prior to improvement and appellant discovered therefrom that his house was between 7.84 and 13 feet from the neighbor's side lot line thereby violating the 15 foot setback, making it some 40 feet from the opposite side line.

6. Suit was filed May 17, 1977 in the Circuit Court for Washington County.

7. Summary judgment was granted appellees on December 5, 1979 holding that the suit was barred by limitations.

Leaning toward error, if at all, on the side of prudence, the trial judge held that the statute began to run when appellant occupied the dwelling in January 1973. Erroneously assuming that the adoption of the discovery rule in Maryland malpractice cases constituted its adoption for all purposes (citing *Leonhart v. Atkinson,* 265 Md. 219 (1972)), the trial judge proceeded to hold that had the appellant used due diligence, the wrong should have been discovered. In short he applied the "prudent plaintiff" or "due diligence" test. In so doing, however, he overlooked the fact that plaintiff had alleged factual circumstances which, if proved and believed, may have made the applicability of those tests susceptible to different factual interpretations.[4] The standard to be applied for when a cause of action accrues is properly a judicial determination, *Harig, supra* at 75. But the factual nuances of the case, susceptible to varying interpretations to which that standard must be applied, are

---

4. Appellant contends that the overgrown nature of the undeveloped property obscured his ability to determine valid property lines. There was also some question in deposed testimony as to where wooden aboveground markers were located, if at all, at the time of purchase.

questions for a jury, subject to instructions of the court as to what in law is sufficient to constitute a bar or to take the case ouf of the statute. *W., B. & A. Elec. R. R. Co., supra* at 207. That which constitutes diligence and prudence is, like beauty, a judgment made through the eyes of the beholder, not to be summarily determined by judges as a matter of law.

In the context of this case, however, appellant had the burden of constructive notice with which a property owner is charged relating to restrictions in his deed, *Levy v. Dundalk Co.,* 177 Md. 636, 644 (1940), and presumably regarding the location of his property lines as well, *Heckrotte v. Riddle,* 224 Md. 591, 594 (1961); *Piper v. Jenkins,* 207 Md. 308, 313-314 (1955) — especially where there was so obvious a violation of the setback restrictions due to the appellee's gross failure to "center" the structure. Certainly the existence of constructive notice provided the judge strong reason to believe that appellant had sustained legal harm, but with the exercise of due diligence should have discovered the wrong. See, *e.g., Mattingly v. Hopkins,* 254 Md. at 95. In light of the *Harig* extension, it may be that the Court of Appeals would extend the application of the discovery exception in a property line case where a wrong related thereto is "inherently unknowable" because of a minimal intrusion, but as yet they have not gone that far.

Prior to *Harig* the only application of the discovery exception in Maryland in a case not dealing with professional malpractice [5] was by dicta in *Callahan v. Clemens,* 184 Md. 520, 527 (1945), which dealt with the faulty construction of a wall encroaching by .02 of a foot to .6 of a foot on a neighboring property. Limitations was only an alternative reason given by the Court of Appeals for affirming dismissal

---

5. Judge Finan, writing for the Court in Mattingly v. Hopkins, 254 Md. 88 (1969), strained to bring the case within the professional malpractice exception despite its having been a survey error involved:

"We see no basic distinction between the application of the 'discovery rule' in a medical malpractice case and in the instant case, which assuming that engineering is a profession, is in essence a professional malpractice situation." *Id.* at 94-95.

*Harig* made no attempt to restrict the exception to professional malpractice.

by the trial court, and it does not appear from the single
sentence:

> "Moreover, the allegedly tortious act of negligently
> erecting the wall occurred in 1929, and its alleged
> defects [6] became known to the complainant in
> 1939. A cause of action accrued at that time." *Id.* at
> 527.

that the Court of Appeals at that juncture had any intention
of extending the discovery exception beyond professional
malpractice or fraud.

The case before us involved no professional malpractice
and the facts as alleged or agreed indicate no fraud pursuant
to Cts. & Jud. Art., § 5-203.[7] Even under the *Harig*
extension the facts here do not approach a showing that the
wrong was "inherently unknowable", especially in light of
the constructive knowledge imputed to them.

Although the trial court should have applied the general
rule rather than the discovery exception, its visceral
instincts were correct. It matters not what reasons are given
in a court's opinion so long as its judgment is correct. *Cf.*
*Hudson Bldg. Supply Co. v. Stulman,* 258 Md. 304 (1970).
Applying the general rule that the statute begins to run
from the date of the wrong, summary judgment was properly
entered. But because of the circumstantially equivocal
nature of the terms "due diligence" and "prudent persons",
summary judgment based on the trial court's rationale
would have been questionable at best.

*Judgment affirmed.*

*Costs to be paid by appellant.*

---

6. There is no way of determining whether the inherently unknowable
"alleged defects" alluded to were based upon the faulty structure of the now
crumbling wall, its diversion of surface water, or its perceptively
insignificant encroachment.

7. Whether the remedial legislation found in § 5-203 singularly
establishing fraud as the sole discovery rule exception to the "general rule",
was intended by the Legislature to restrict the application of discovery
exceptions to that which it established in that 1868 statute, is a question
apparently never addressed by the Courts. It is not an unreasonable
hypothesis, however, despite the subsequent judicial expansions of the
application of the discovery rule.

*Moore, J., dissenting:*

This case was decided on appellee's motion for summary judgment, without supporting or opposing affidavits. The relevant facts as gleaned from the declaration and exhibits are significant and may be summarized as follows: Appellant, Howard W. Poffenberger, Jr.,[1] purchased an unimproved lot in the planned development of Brightwood Acres in Washington County. The deed to appellant, dated August 22, 1972, was recorded on September 18, 1972. The lot was subject to the conditions and restrictions in the deed and recorded plat. Paragraph 6 of Section "B" of the plat provided:

> "No portion of any building except open porches and steps shall be located on any lot nearer to the front lot line or nearer to the side street line than the minimum building set-back line shown on this plat. *No portion of any building except open porches and steps shall be located within 15 feet of any other side lot lines.*" (Emphasis added.)

On August 23, 1972, appellant entered into a contract with the appellee, Donald E. Risser, a builder and developer operating under the name of "Quality Homes" in Hagerstown, Maryland, for the construction of a house on the lot. It was understood and agreed that appellant's residence would be constructed in the center of the lot and that the construction would comply with all restrictions, including set back lines. The house was completed in December 1972; occupancy by the appellant took place in January 1973.

This was a new subdivision. There was no dwelling on either side of the appellant at the time of his purchase of the lot nor during the construction of his home. Some three years later, in March 1976, an adjacent lot was surveyed, and at that time appellant first discovered that his residence was built in violation of the above quoted set back restriction. It was some 41 feet from one side lot line but only 8 feet from the opposite side lot line.

---

1. We are told that appellant's profession is that of schoolteacher.

On May 17, 1977, appellant filed suit in the Circuit Court for Washington County against the builder for breach of contract and negligence. The declaration alleged, *inter alia,* that at the time of the purchase of the lot, it was overgrown with weeds and there was no visible definition of the boundary lines; that the appellant at no time located the place where his residence was to be constructed nor, indeed, had any knowledge before construction as to the location of the house but "relied completely upon the expertise and skill" of the builder.

Summary judgment was granted for the appellee on the ground that he had not commenced his action within three years from the date his cause of action accrued. In reaching its decision, the trial court applied the "discovery" rule but found that although the plaintiff had no actual knowledge of the error prior to March 1976, he did have constructive knowledge. The court then arbitrarily held that the period of limitations began to run in January 1973 — the date appellant first occupied his home. To quote the court's "Memorandum Opinion,"

"[T]here is no evidence before the Court, from which it could be found that the Plaintiff actually discovered the defect in question prior to March, 1976.

"However, there is a question as to whether or not the Plaintiff should have discovered the defect prior to 1976. It is clear that the Plaintiff is charged with the knowledge of the applicable restrictive covenants establishing the side lot set back lines, such covenants having been recorded among the Land Records of this County and being covenants running with the land. *Levy v. Dundalk,* 177 Md. 636 (1940).

"This Court believes that the Plaintiff is similarly charged with the specific knowledge of his property boundaries so as to give rise to the inference that the Plaintiff should have had or should have known of the defect in question at the

time he occupied the dwelling in January, 1973. The Court concludes that January, 1973, is the date the statute of limitations began to run and the Court finds that it expired in January, 1976. The Court must, therefore, conclude that the Defendants are entitled, as a matter of law, to summary judgment as a result of this action having been barred by the Statute of Limitations."

I

In affirming the trial court, the majority concludes that "its visceral instincts were correct," *i.e.,* the result was proper although the court's reasoning was wrong. The majority holds that there was no professional malpractice to justify the application of the discovery rule and that the "general rule" should have been applied.[2] Earlier in the opinion, the majority also made it plain that, in its view, the doctrine of constructive notice of property restrictions was controlling. The opinion states:

"In the context of this case, however, appellant had the burden of constructive notice with which a property owner is charged relating to restrictions in his deed, *Levy v. Dundalk Co.,* 177 Md. 636, 644 (1940), and presumably regarding the location of his property lines as well, *Heckrotte v. Riddle,* 224 Md. 591, 594 (1961); *Piper v. Jenkins,* 207 Md. 308, 313-314 (1955) — especially where there was so obvious a violation of the setback restrictions due to the appellee's gross failure to 'center' the structure."

I respectfully differ. In my view, the discovery rule [3] is

2. In Harig v. Johns-Manville Products Corp., 284 Md. 70, 76, 394 A.2d 299 (1978), Chief Judge Murphy stated that "the general rule" is that limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time the wrong was discovered.

The majority opinion in this case does not state when the statute under the general rule would have begun to run. Presumably it would have been at a point in time reasonably soon after the commencement of construction of appellant's residence in 1972.

3. As the majority points out (n. 1), under the discovery rule, the statute of limitations begins to run from the time of the discovery of the alleged

applicable here but the ancient principle of constructive notice is not.[4]

The pivotal question is whether the appellant exercised due diligence to discover the wrong inflicted upon him by the builder, an issue which, as the majority appears to agree, was not properly susceptible of determination on the appellee's motion for summary judgment in this case. Since 1917 when the discovery rule was first applied in Maryland in a medical malpractice case, *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83, it has been applied in diverse "professional" settings: *Watson v. Dorsey,* 265 Md. 509, 290 A.2d 530 (1972) and *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969) *(attorney malpractice); Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972) and *Feldman v. Granger,* 255 Md. 288, 257 A.2d 421 (1969) *(accounting malpractice); Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) *(negligence of civil engineering firm); Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969) *(architectural and contractor malpractice).*

In a case factually similar to the instant appeal, *Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945), the Court of Appeals was confronted with a claim involving the negligent construction of a wall which encroached, although slightly, on a neighboring property. Judge Henderson, writing for the Court, observed that the negligent construction occurred in 1929, its alleged defects became known to the complainant 10 years later and that "[a] cause of action accrued at that time," *i.e.,* in 1939. *Id.* at 527, 41 A.2d at 476. The majority suggests that the Court of Appeals did not in *Callahan* have "any intention of extending the discovery exception beyond professional malpractice or fraud." What the Court may have intended is not the point. The significance of *Callahan* is that the discovery rule (applicable to professionals) was there applied in a *construction* case; and the Court did so on the authority of the 1917 decision in *Hahn v. Claybrook, supra.*

injury, or when it should have been discovered by the exercise of due diligence.

4. No denigration of the constructive notice doctrine is intended. It is fundamental law, susceptible of innumerable proper and sound applications.

Furthermore, the viability of *Callahan* was recognized some 25 years later in *Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969), wherein the Court in another construction case applied the discovery rule to two defendants, one a building contractor and the other an architect. Writing for the Court, Judge Singley stated, "we have previously indicated *[citing Callahan v. Clemens]* that the discovery rule may be applied to a case involving faulty construction." *Id.* at 444, 258 A.2d at 179. *See Mattingly v. Hopkins,* 254 Md. 88, 94, 253 A.2d 904, 907 (1969).

The majority concludes that in this case there was no "professional" malpractice, apparently without fully considering the import of these prior construction cases nor contemporary interpretations of the word, "professional." The term "profession" is not, as of old, limited to a few selected endeavors. Black's Law Dictionary at 1375 (4th ed.) defines "profession" as:

> "A vocation, calling, occupation or employment involving labor, skill, education, special knowledge and compensation or profit, but the labor and skill involved is predominantly mental or intellectual, rather than physical or manual."

In *Aulen v. Triumph Explosive, Inc.,* 58 F. Supp. 4 (D. Md. 1944), the status as professionals of machine designers employed in a munitions factory was at issue. There, the Court noted:

> "Fifty years ago it is probable that the plaintiffs' occupation as machine designer would not have been classed as a profession; but it is evident from the Administrator's definition that the scope of the term 'professional' has been much broadened for administration of the [Fair Labor Standards] Act. In recent years many new professions have become recognized. It was said in United States v. Laws, 1895, 163 U.S. 258, 266, 16 S. Ct. 998, 1001, 41 L. Ed. 151, 'Formerly, theology, law, and medicine were specifically known as *'the professions';* but as the applications of science and learning are

extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge, as distinguished from mere skill." (Emphasis in original.) *Id.* at 8.

The Court concluded, *inter alia,* that the designers, whose work was predominately intellectual and varied in character and required the exercise of discretion, were engaged in a "professional" capacity. *Accord, Mayor and City Council of Baltimore v. Smith,* 168 Md. 458, 177 A. 903 (1935) (municipal hospital nurse a professional). *See, e.g., Mauzy v. Hornbeck,* 285 Md. 84, 400 A.2d 1091 (1979), wherein the Court found that a number of employees of a community college were "professional employees." The Court referred to language in a prior case, *Dvorine v. Castelberg Jewelry Corp.,* 170 Md. 661, 185 A. 562 (1936) which dealt with whether optometry was a "learned profession," and pointed out at 285 Md. 95, 400 A.2d 1097:

> "[T]he concept of learned profession was historically more limited than the literal meaning of the word 'profession' which 'may be applied to any calling requiring special knowledge of some branch of science or learning . . . .'" Certainly the plaintiffs fall within this meaning. Their positions involve special skill, education and knowledge, and the labor and skill is predominantly intellectual rather than physical or manual. Obviously the normal meaning of 'professional employee' is not limited, as the Board's rule states, to employees 'in the teaching field (courses offered for college credit).' "

In my view, a modern builder and developer, as distinguished from a foreman or carpenter, plumber or electrician on a construction site, is engaged in professional work. The gross failure of the "Quality Homes" builder in this case to locate the house properly on the lot constituted negligence or professional malpractice.

The critical inquiry, then, is whether the appellant knew or should have known that the construction of his home by the appellee was in violation of the set back restrictions.[5] The making of that determination necessitates a more complete factual record than is present in this case. The deficiency may not, in my judgment, be cured by application of the doctrine that the appellant was on constructive notice of his property lines. To apply such a theory in the context of a professional malpractice case, where actual notice is lacking, is a logical fallacy.[6] It would render meaningless the reliance which lay persons customarily place upon architects, engineers, surveyors and builders. The doctrine is perfectly applicable to grantors and grantees and their successors in interest. It has no relevance in a malpractice action by the hapless homeowner against a careless builder and developer upon whose special knowledge he placed full reliance.

Finally, it is subversive of the rationale of the discovery rule as explained in *Harig, supra,* at 76-77, 394 A.2d at 303:

> "Ordinarily, a potential tort plaintiff is immediately aware that he has been wronged. He therefore is put on notice that the statute of limitations begins to run from the date of the alleged wrong. *R. J. Reynolds Tobacco Co. v. Hudson,* 314 F.2d 776, 781-782 (5th Cir. 1963). Our predecessors recognized, however, that in professional malpractice cases, the fact that a tort has been committed may go unnoticed for years, because the plaintiff is unqualified to ascertain the initial wrong and could not reasonably be expected to know of the tort until actual injury is

---

**5.** Appellant's declaration alleged that not only had he placed shrubbery at great expense and created a lawn on what he believed to be his lot, but that also his septic system and drainfield was installed on the adjoining property.

**6.** Indeed, if the "general rule" is applicable here, rather than the "discovery rule," as the majority holds, there appears to be no reason why the majority had to concern itself with constructive notice at all. Where the general rule is invoked, "lack of knowledge of the wrong is immaterial." *Id.* at 603.

experienced. *Waldman v. Rohrbaugh,* 241 Md. 137,
215 A.2d 825 (1966). The inherently unknowable
character of this type of cause of action, coupled
with the peculiarly harsh consequences of
adherence to the general rule of accrual from the
date of the 'wrong,' prompted our predecessors to
recognize the discovery principle in determining
when a cause of action accrues for latent injury
resulting from professional malpractice."

Furthermore, the majority's opinion is at odds with the
application of the statute of limitations in another property
line case, *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904
(1969). In *Mattingly,* the plaintiff-appellant sustained legal
harm by the negligent placement of stakes by Hopkins, a
civil engineer, when a resubdivision of Mattingly's land was
prepared at the request of Mattingly. Although he
purchased the lots in 1951 and subsequently subdivided
them in 1952 to sell to third parties, the Court held that the
statute of limitations did not begin to run until 1959, the
year appellant first perceived what appeared to be a
discrepancy between the plats and the physical markers.
The Court applied the discovery rule. Judge Finan stated
that "assuming that engineering is a profession, [this] is in
essence a professional malpractice situation." *Id.* at 94-95,
253 A.2d at 908. More importantly, perhaps, there was no
holding that Mattingly, an attorney, was on constructive
notice of the property lines of the subdivided lots from the
plat or deeds to his grantees, or at the time he purchased his
lot or subdivided it. The Court stated:

"In the case at bar, Mr. Mattingly, who is a
practicing member of the Maryland Bar, certainly
had strong reason to believe that he had sustained
legal harm when he noted the discrepancy between
the placement of the iron pipes on the ground and
their location on the plats in the summer of 1959
and this was unquestionably confirmed when the
appellees correctly replaced the iron pipes in May or
June of 1960. *We think the mistake caused by*

*appellees' negligence was discovered at that time or with the exercise of reasonable diligence should have been discovered.* He knew that he had made conveyances of property based on the location of the iron pipes on the ground to several individuals during the years 1953 to 1959 and that the error on the ground thus compounded by the adverse conveyance he had made, not only cast a cloud on the title to his own land but those of his grantees, if not in law, then certainly in equity." (Emphasis added.) *Id.* at 95, 253 A.2d at 908.

As the trial court found, absent constructive notice, the appellant in the instant case had no knowledge of the builder's placement of the house in violation of the set back restriction and would not have known of the violation at the time the footings were poured, the foundation was laid, the joists erected, the bricks and mortar applied, the house completed nor, of course, when he and his family moved in. The record fails to sustain a finding that he did not exercise reasonable diligence. I would reverse and remand.